# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BROAN-NUTONE LLC,

               Plaintiff,

v.

CONGLOM HONG KONG LIMITED,
THE HOME DEPOT, INC., and
HOME DEPOT U.S.A., INC.,

               Defendants.

Case No. 23-CV-393-JPS

**ORDER**

      Plaintiff Broan-NuTone LLC ("Plaintiff") sues Defendants Conglom Hong Kong Limited ("Conglom"), The Home Depot, Inc. ("Home Depot Inc."), and Home Depot U.S.A., Inc. ("Home Depot USA") (collectively, "Defendants") for patent infringement. ECF No. 37 at 1. Both Conglom and, jointly, Home Depot Inc. and Home Depot USA (together, "Home Depot"), move to dismiss for failure to state a claim. ECF Nos. 45, 51. For the reasons set forth herein, the Court will deny the motions and, by separate order, enter a pre-trial scheduling order in this matter.

## 1.    FACTS

### 1.1    Plaintiff and the Patents

      Plaintiff manufactures and distributes residential ventilation products, including range hoods. ECF No. 37 at 2. Its "unique, easy [to] install system brackets empower a single person to install [its] range hoods in less than half the time of traditional methods." *Id.* at 3. Its "patented bracket system supports the hood during installation, permitting a single installer" to perform the installation, "whereas a traditional range hood

typically requires a second installer to hold the unit while it is affixed in place." *Id.*

Plaintiff sells and distributes its products through various retailers including Home Depot. *Id.* Other product manufacturers compete for product placement in these retailers, which often allot limited shelf space for particular types of products. *Id.*

Plaintiff owns all right, title, and interest in two patents at issue in this case: U.S. Patent Nos. 10,539,329 (the "'329 patent") and 11,519,611 (the "'611 patent") (collectively, the "patents"). *Id.* at 1–2. The '329 patent was issued on January 21, 2020. *Id.* at 8. The '611 patent was issued on December 6, 2022. *Id.* at 9. The patents relate to range hood products and methods for installing range hood products with a mounting plate that facilitates easy installation. *Id.* As noted above, the patents enable a single installer to safely and efficiently install range hoods, reducing the cost, complexity, and speed associated with installation. *Id.*

Claim 1 of the '329 patent is as follows:

A range hood mountable to an underside mounting surface of a cabinet, comprising:

a base section defining a thickness and having an upper surface and defining at least one support opening on the upper surface; and

a mounting plate mountable to the cabinet at the underside mounting service and including a base portion defining a thickness and having at least one support feature configured to be inserted through the corresponding support opening to engage the upper surface of the base section to hold the base section proximate to the cabinet before being secured thereto by at least one fastener;

wherein the support feature comprises a tongue formed from material of the base portion and displaced from the base

portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section of the range hood;

wherein the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue.

ECF No. 37-1 at 29.

a mounting plate mountable to the cabinet at the underside mounting surface and including a base portion defining a thickness and having at least one support feature configured to be inserted through the corresponding support opening to engage the upper surface of the base section to hold the base section proximate to the cabinet before being secured thereto by at least one fastener;



ECF No. 37-3 at 4 (text of Claim 1 of the '329 patent in first column; photos of Conglom's Vissani Range Hood, Model No. QR254S in second and third columns).

| | |
|---|---|
| wherein the support feature comprises a tongue formed from material of the base portion and displaced from the base portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section of the range hood; |  |
| wherein the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue. | |

*Id.* at 5 (text of Claim 1 of the '329 patent in first column; photos of Conglom's Vissani Range Hood, Model No. QR254S in second and third columns); *see also id.* at 8–10 (same with respect to Claim 15).

Claim 15 of the '329 patent is as follows:

> A method of mounting a range hood to an underside mounting surface of a cabinet, comprising:
>
> coupling a base portion of a mounting plate to the cabinet at the underside mounting surface, wherein the base portion includes at least one supported feature;

engaging the support feature to a support opening in an upper surface of the range hood such that the mounting plate supports the range hood and positions the range hood proximate the underside mounting surface, wherein the support feature comprises a tongue formed from material of the base portion displaced from the base portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section of the range hood and the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue; and

inserting a fastener through a mounting feature in the upper surface of the range hood and through a hood opening in the base portion to couple the range hood to the mounting plate.

ECF No. 37-1 at 29–30. Claim 1 of the '611 patent is as follows:

A range hood mountable to an underside mounting surface of a cabinet, comprising:

a range hood base section defining a thickness and having an upper surface defining at least one support opening, and

a mounting plate mountable to the cabinet, the mounting plate comprising a base portion having at least one tongue, the tongue (i) having a proximal end extending from the baes portion to a crest, (ii) extending from the crest to a trough, and (iii) extending from the trough to a distal end of the tongue which is displaced from the base portion a distance greater than the thickness of the base section of the range hood;

wherein the distal end of the at least one tongue is configured to be inserted through the support opening of the range hood base section to hook the range hood as the range hood is moved from the distal end of the at least one tongue toward the proximal end of the at least one tongue.

ECF No. 37-2 at 29.

### 1.2    Defendants and the Alleged Infringement

Conglom is a foreign manufacturing company. ECF No. 37 at 4. At some unspecified point, Plaintiff and Conglom discussed the possibility of employing Conglom to manufacture certain of Plaintiff's products or component pieces. *Id.* at 9. As part of those discussions, Plaintiff shared with Conglom design information concerning its patented "easy installation" technology. *Id.* And in May 2022, Conglom proposed to license the patents from Plaintiff. *Id.* at 7.[1] Apparently, that proposition fell through, although the Amended Complaint is silent on that point. Conglom thereafter copied Plaintiff's patented technology and began to manufacture and sell its own competing range hood products (the "Accused Products"). *Id.* at 9.

Plaintiff alleges that Conglom now makes, uses, offers to sell, sells, and imports into the United States the Accused Products. *Id.* at 4. Conglom includes written instructions in the Accused Products' packaging that direct end-users and customers to contact Conglom for service and part replacement. *Id.* at 6. Conglom has responded to such requests by shipping or causing to be shipped into the United States replacement parts constituting material parts of the inventions claimed in the patents, that are specifically made/adapted for an infringing use, and which are not a staple or commodity suitable for substantial non-infringing use. *Id.* For example, in or around February 12, 2024, Conglom shipped or caused to be shipped into the United States a replacement mounting bracket for an Accused

---

[1] It is not clear how Conglom could seek to license the patents, plural, from Plaintiff in May 2022 when the '611 patent was not issued until December 2022.

Product in response to a service request sent in accordance with Conglom's instructions. *Id.*

On or about October 22, 2021, Plaintiff sent a letter to a different, non-party entity, placing it on notice that the Accused Products infringe at least the '329 patent. *Id.* at 9.[2] On or about November 9, 2021, Conglom's counsel contacted Plaintiff's counsel, noting that the letter had been forwarded to him. *Id.* at 10. Plaintiff and Conglom subsequently discussed the alleged infringement. *Id.* Conglom has accordingly had actual knowledge of the '329 patent and of Plaintiff's infringement accusation at least since its receipt of the letter. *Id.* Conglom has also been aware of the '611 patent and Plaintiff's infringement accusation with respect to it since at least the time that Conglom received an email from Plaintiff, sent March 30, 2023, requesting waiver of service, and, in any event, since no later than April 6, 2023, when Conglom responded to the email. *Id.* Plaintiff believes that Conglom will continue to engage in the inducement of, and use, offer for sale, marketing, distribution, and/or importation of, the Accused Products. *Id.*

Plaintiff further alleges that Home Depot sells, uses, and offers to sell—as well as encourages and induces their customers to use—range hoods manufactured by Conglom that infringe the patents. *Id.* at 3. In or around December 2018, agents and/or representatives of Conglom travelled to Atlanta, Georgia, where they met with Home Depot and offered to sell, and sold, to Home Depot the accused products. *Id.* at 5. Conglom imported one or more of the Accused Products into the United States and used them

_____

[2]Plaintiff does not elaborate on what relationship, if any, that non-party entity has with Conglom.

Case 2:23-cv-00393-JPS   Filed 07/15/24   Page 7 of 21   Document 57

in an infringing manner in demonstrations to Home Depot. *Id.* In December 2021, agents and/or representatives of Conglom again traveled to Atlanta, Georgia, and did the same, and around that time, Conglom entered into a supply agreement with Home Depot with respect to the Accused Products (the "Supply Agreement"). *Id.* Pursuant to the Supply Agreement, Conglom offered to sell and did sell the Accused Products to Home Depot, intending for their distribution and sale to consumers in the United States. *Id.*

Conglom affixes the U.S. trademark "Vissani" to the Accused Products that it manufactures. *Id.* at 6. This trademark is owned by Home Depot. *Id.* Conglom has a license to apply the "Vissani" trademark to the Accused Products for purposes of sale and distribution in the United States. *Id.* at 7.

On April 28, 2023, Plaintiff emailed Home Depot, placing Home Depot on notice that the Accused Products infringe the patents. *Id.* at 10. Home Depot has therefore had actual knowledge of the patents and of Plaintiff's infringement accusations since at least April 28, 2023. *Id.* Plaintiff believes that Home Depot will continue to engage in the inducement of, and use, offer for sale, marketing, and distribution of, the Accused Products. *Id.*

Plaintiff brings two counts; one of infringement of the '329 patent, *id.* at 10–14 ("Count One"), and one of infringement of the '611 patent, *id.* at 14–18 ("Count Two"). As to each, Plaintiff alleges direct and induced infringement by Defendants, as well as contributory infringement by Conglom.

As to direct infringement, Plaintiff alleges that Defendants have and continue to directly infringe the patents—specifically, "at least claims 1 and

15 of the '329 patent" and "at least claim 1 of the '611 patent"—by importing, selling, offering for sale, and/or using the Accused Products. *Id.* at 12, 15.

As to induced infringement, Plaintiff alleges that Conglom has induced infringement of the patents by actively encouraging resellers such as Home Depot to directly infringe the patents by introducing the Accused Products into an established distribution channel, and actively encouraging downstream sales and offers for sale of the Accused Products, as well as by encouraging customers to infringe the patents by providing an installation manual which instructs customers to use the Accused Products in an infringing manner. *Id.* at 12, 15–16. Plaintiff further alleges that Home Depot has induced infringement by actively encouraging customers or other users to infringe the patents—for example, by providing manuals, product documentation, and advertising materials that induce customers or other users to use the Accused Products in an infringing manner. *Id.* at 12–13, 16–17.

As to contributory infringement, Plaintiff alleges that Conglom includes written instructions in the Accused Products' packaging which direct end-users and customers to contact Conglom for service and part replacement, and that Conglom responds to such requests by shipping or causing to be shipped replacement parts constituting material parts of the inventions claimed in the patents, that are specifically made/adapted for an infringing use, and which are not a staple or commodity suitable for substantial non-infringing use. *Id.* at 13–14, 17–18. As a result of this, consumers who have requested and received such replacement parts have directly infringed the patents. *Id.*

Conglom moves to dismiss both counts against it, ECF No. 45, while Home Depot only moves to dismiss Count One, ECF No. 46.[3]

## 2. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## 3. ANALYSIS

### 3.1 Direct Patent Infringement

#### 3.1.1 The '329 Patent

First, Conglom argues that the Court should dismiss Count One because Plaintiff has "plead[ed] itself out of court" by pleading in "the Amended Complaint . . . that the [A]ccused [P]roducts do not infringe the

___

[3]Home Depot joins in the arguments raised by Conglom as to Count One and accordingly did not file a "separate memorandum or other supporting papers." ECF No. 51 at 1 n.1.

'329 [p]atent." ECF No. 46 at 3 (quoting *Tamayo*, 526 F.3d at 1086).
Specifically, Conglom argues that

> [Plaintiff] alleges infringement of independent claims 1 and
> 15 of the '329 [p]atent by specifically alleging . . . that the
> allegedly infringing brackets include "a tongue that *extends
> away from the base section* at the tongue proximal end to a
> crest." . . . But the '329 [p]atent claim chart in the Amended
> Complaint purporting to support this allegation shows just
> the opposite—the Accused Product has a tongue that extends
> *towards* the base section.

*Id.* at 3 (citations omitted); *id.* at 5 ("[B]ecause the tongue in the Accused
Product is used for insertion into the base section, it is extending toward
the base section from the proximal end, not 'away from the base section' as
the claims require."). "Because the Amended Complaint establishes that the
structure of the Accused Product is exactly the opposite [of] the last
limitation of the claim," Conglom argues, "the product cannot infringe,
either literally or under the doctrine of equivalents." *Id.* at 5–6 (citing *Amgen
Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1029 (Fed. Cir. 2019)).

In opposition, Plaintiff characterizes Conglom's argument as a
"demand[] that this Court resolve a disputed issue of claim construction,"
which Plaintiff argues is both a "[p]atently [i]nappropriate [g]round[] for a
[m]otion to [d]ismiss" as well as "[d]emonstrably [i]ncorrect." ECF No. 49
at 3; *id.* at 6 ("[Conglom] contends that a tongue which extends through and
then away from the base of the range hood cannot be deemed to extend
away from the hood's base section as a matter of law . . . . [Conglom's]
arguments are not only incorrect, they are not a proper basis for dismissal
under Rule 12.").

In reply, Conglom disputes Plaintiff's characterization of its
argument as one of claim construction and asserts simply that "the claim is

specific and does not cover what [Plaintiff] alleges is infringing." ECF No. 53 at 2; ECF No. 56 at 1–2.

The Court agrees with Plaintiff. Conglom's "motion to dismiss . . . improperly seeks . . . a determination of the substantive merits of the controversy between the parties—the[] motion essentially asks for the [C]ourt to construe claim 1 and compare it to the[] allegedly infringing . . . product." *Midwest Innovative Prods., LLC v. Kinamor, Inc.*, No. 16 CV 11005, 2017 U.S. Dist. LEXIS 82699, at *4 (N.D. Ill. May 31, 2017) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004)); *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 800 (N.D. Ill. 2020) (asking the court "to compare the claims of the [accused patent] with those of the [plaintiff's patent] to decide whether a spout assembly with threadforms of different lengths plausibly infringes a claim describing a spout assembly with threads of equal geometries . . . [which] would essentially require the court to construe claim 1 of the [plaintiff's patent] and compare it to the allegedly infringing [accused product]—not an appropriate exercise at this [motion to dismiss] stage") (citing *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 U.S. Dist. LEXIS 2631, at *10 (N.D. Ill. Jan. 6, 2017) ("The U.S. Court of Appeals for the Federal Circuit has cautioned against construing claim language to resolve, at the pleading stage, what are effectively non-infringement arguments.")).

Conglom insists that its opposition is not based in claim construction, ECF No. 53 at 1, but the Court is not entirely convinced. Claim construction involves "a determination of what the words in the claim mean." *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 906 (Fed. Cir. 2019) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996)). It is "a matter of resolution of disputed meanings and technical

scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). "After claim construction, an infringement analysis compares the properly construed claim with the allegedly infringing device[]." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1358 (Fed. Cir. 2002) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). This is essentially what Conglom and Home Depot ask the Court to do—to interpret the language in Claim 1, settle on its construction, and compare the Accused Products against that construction.

The Court declines to do so at this stage. "[C]laim construction at the pleading stage—with no claim construction processes undertaken—[i]s inappropriate." *R+L Carriers, Inc. v. DriverTechn LLC*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012); *Midwest Innovative Prods.*, 2017 U.S. Dist. LEXIS 82699, at *12 ("[C]laim construction is generally inappropriate on a motion to dismiss because claims are afforded 'their broadest possible construction' at the pleading stage." (quoting *R+L Carriers, Inc.*, 681 F.3d at 1343 n.13)). "Only when a complaint contains allegations that 'render[] [the plaintiff's] infringement claim not even possible, much less plausible' will dismissal on this ground be warranted." *HexcelPack, LLC v. Pregis LLC*, No. 2024 U.S. Dist. LEXIS 77454, at *19 (N.D. Ill. Apr. 29, 2024) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) and citing *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 778–79 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017)). The Court declines to conclude at this early stage that Plaintiff's infringement claim is simply "not even possible." *Id.*

"Plaintiff's complaint specifically identifies the accused product by its name and includes photographs of the product." *Liqui-Box Corp.*, 449 F. Supp. 3d at 798 (citing *Disc Disease Sols Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1257 (Fed. Cir. 2018) and *Artrip v. Ball Corp.*, 735 F. App'x 708, 714–15 (Fed. Cir. 2018)). "Plaintiff's claim chart includes photographs annotated with arrows showing which part of the [Accused Product] is described by the claim and corresponds to each claim limitation." *Id.* "And Plaintiff's claim chart includes all of the language of claim 1, identifying features of the accused product that correspond to every claim limitation." *Id.* "Accordingly, the complaint contains, as required to plausibly state a claim, allegations that 'every limitation, or equivalent thereof, . . . can plausibly be found in [the] accused product." *Id.* (citing *Atlas IP, LLC v. City of Naperville*, No. 16 C 10744, 2016 U.S. Dist. LEXIS 93541 (N.D. Ill. July 19, 2016)). For all these reasons, the Court rejects Conglom's arguments on this point.

### 3.1.2 Both of the Patents

Conglom also argues that Plaintiff has failed to allege direct infringement of either of the patents because Plaintiff "has not alleged that Conglom . . . imports or sells the Accused Products," apart from alleging that Conglom "imported one or more of the Accused Products into the United States and used them in an infringing manner in demonstrations to Home Depot," which Conglom claims "can[not] support a claim of infringement." ECF No. 46 at 7–8 (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016)). "There is no allegation that Conglom . . . imported into the U.S.," Conglom argues, "and the allegation that it negotiated agreements with the U.S. company and displayed a product in the U.S. is not sufficient." *Id.* at 8.

The Court will reject this argument since the Amended Complaint explicitly alleges that which Conglom claims that it omits: that "Conglom has engaged and will continue to engage in the . . . importation of ventilation fan products that infringe one or more claims of the" patents. ECF No. 37 at 10; *id.* at 4 ("Conglom makes and uses, offers to sell, sells and imports in and into the United States, range hoods that infringe the . . . [p]atents . . . ."). It appears, as Plaintiff suggests, that Conglom has "ignore[d] Plaintiff's allegations, falsely asserting that Plaintiff 'has not alleged that [Conglom] imports or sells the Accused Products.'" ECF No. 49 at 8 (citing ECF No. 46 at 7). Plaintiff makes that broader allegation of sale and importation in addition to its specific one regarding demonstrations to Home Depot. *See id.* ("Defendant focuses exclusively and solely upon the allegations of paragraphs 20 and 21, . . . ignor[ing] Plaintiff's additional allegations relating to importation . . . ."). Accordingly, the Court need not address Conglom's contention that the latter, narrower allegation is insufficient as a matter of law.

### 3.2    Induced Patent Infringement

As noted *supra* Section 1.2, Plaintiff claims that Conglom has induced infringement by "actively encouraging resellers such as Home Depot to directly infringe . . . the '329 patent by introducing the Accused Products into an established distribution channel, and actively encouraging downstream sales and offers for sale of the Accused Products." ECF No. 37 at 12. In opposition to this theory, Conglom argues that "[t]his is no different than any supplier/retailer relationship and cannot constitute induced infringement." ECF No. 46 at 10.

Conglom cites to just one case in support of its contention that a plaintiff cannot, as a matter of law, premise a claim for induced patent

infringement on the defendant's allegedly having "introduc[ed] the Accused Products into an established distribution channel, and actively encourag[ed] downstream sales and offers for sale of the Accused Products" to resellers. ECF No. 37 at 12; ECF No. 46 at 9–10 (citing *Minitube of Am., Inc. v. Reprod. Provision, LLC*, No. 13-CV-685-JPS, 2014 U.S. Dist. LEXIS 60596, at \*46–48 (E.D. Wis. May 1, 2014)). Conglom cites to that case with a *c.f.* introductory symbol, meaning that the authority ostensibly "supports a proposition different from the main proposition but sufficiently analogous to lend support." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 1.2(a) (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). In other words, Conglom does not point to any on point authority in support of its argument that Plaintiff's theory is not viable as a matter of law. And as Plaintiff notes, *Minitube* does not hold that liability for inducement is limited to the factual circumstance presented therein. ECF No. 49 at 12.

The Court has neither the time nor the inclination to do Conglom's research for it and find authority supporting its argument for dismissal. Conglom brought the motion, and it is Conglom's burden to proffer sufficient, applicable authority in support of its sought relief. As to this point, Conglom has not done so. The Court leaves it at that.

Plaintiff also alleges that Conglom has induced infringement by actively encouraging customers to infringe the '329 patent by "provid[ing] the installation manual included in the Accused Products, which induces and instructs customers . . . to use the Accused Products in" an infringing manner. ECF No. 37 at 12. As to this, Conglom argues that "the manual is sold to U.S. consumers by Home Depot and is not imported by Conglom," and that "regardless of who supplies the manual, it provides alternative

methods for installing the range hood[,] so it cannot support an inducement claim." ECF No. 46 at 9.

The Court will reject Conglom's former argument that it does not, in fact, import the instruction manual. Conglom cannot prevail on a motion to dismiss by contending that Plaintiff's well-pleaded allegations are factually false. *Kubiak*, 810 F.3d at 480–81; *Liqui-Box Corp.*, 449 F. Supp. 3d at 900 ("Defendants also challenge the accuracy of Plaintiff's allegations, but that challenge is not a basis for dismissal, either." (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018))).

The Court now moves onto Conglom's latter argument. In order to state a claim for induced patent infringement, the plaintiff must allege "first that there has been direct infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) (citing *Jansen*, 342 F.3d at 1334). Conglom argues that Plaintiff's inducement claim fails on this point because, since the manual provides "alternative methods for install[ation]. . . without the allegedly infringing brackets," the Accused Products do not "*necessarily* infringe[] the patent." ECF No. 46 at 9 (emphasis added) (quoting *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)); *see also* ECF No. 46-1 at 3 (instruction manual).

Conglom misses the mark. "Sale of an allegedly infringing product is sufficient" for purposes of an inducement claim "if the instructions teach an infringing use *or* if the device can only be used in an infringing manner." *Cascades Comp. Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 767 (N.D. Ill. 2015) (citing *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed.

Cir. 2012)) (emphasis added). It is not necessary for inducement liability, as Conglom seems to suggest, that the defendant both provide instructions teaching an infringing use *and* that the accused product be capable of *only* that infringing use.

Conglom's reliance on *ACCO* doesn't help it—in *ACCO*, the plaintiff demonstrated that the accused product was "capable of being used in an infringing manner" and that such infringing use was the "natural and intuitive way to employ the" accused product. 501 F.3d at 1312. But it was not demonstrated that the defendant specifically instructed or encouraged end users to use the accused product in that infringing manner, nor was it demonstrated that the accused product could *only* be used in an infringing manner, so the defendant was off the hook. *Id.* at 1312–13. The court there concluded that because "the accused device c[ould] be operated in either of two modes—the infringing . . . method or the noninfringing . . . method," and could therefore "be used at any given time in a noninfringing manner," it did not "necessarily infringe the . . . patent." *Id.* at 1313. *ACCO* did not involve, as Plaintiff here alleges, an instruction by the defendant to the end user for an infringing use. Conglom's reliance on *ACCO* is therefore inapposite. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1318–19 (Fed. Cir. 2009) (rejecting litigant's reliance on *ACCO* in its opposition to inducement liability because the litigant expressly "instructed its customers to use the accused products in an infringing way," whereas in *ACCO*, the accused products "were sold . . . without instructions teaching the infringing method").

To the contrary, authority suggests that a defendant's instruction to an end user for a noninfringing manner of use does not simply cancel out the defendant's instruction for an infringing use. *See Glaxosmithkline LLC v.*

Case 2:23-cv-00393-JPS   Filed 07/15/24   Page 18 of 21   Document 57

*Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1330 (Fed. Cir. 2021) (rejecting the defendant's argument that no inducement liability could lie against it because the label the defendant placed on the accused product could "encourage both infringing and noninfringing uses").

For all these reasons, the Court rejects Conglom's arguments as to inducement liability.

### 3.3    Contributory Patent Infringement

Lastly, Conglom argues that Plaintiff's allegations of contributory infringement against it should be dismissed because Plaintiff "only alleges that Conglom . . . has shipped or caused to ship in the United States a single 'replacement mounting bracket for an Accused Product,'" which Conglom claims "was an artificial situation" orchestrated "presumably at the direction of" Plaintiff, and which allegation "does not show contribution to the alleged country-wide infringement." ECF No. 46 at 10.

Conglom cites to no authority whatsoever supporting its suggestion that Plaintiff's allegations in the Amended Complaint going to contributory infringement are insufficient, and Conglom's contention that the situation alleged was "artificial" is an appropriate basis for dismissal at this stage. *See Kubiak*, 810 F.3d at 480–81.

Nor is Conglom's characterization of Plaintiff's allegations accurate; Plaintiff alleges in the Amended Complaint that Conglom

> includes written instructions in the Accused Products' sealed packaging that direct end users and customers in the United States to contact Conglom[] . . . for service and part replacement . . . . Conglom has responded to such customer requests by, among other things, shipping or causing to be shipped into the United States, replacements parts constituting material parts of the inventions claimed in the Asserted Patents . . . .

ECF No. 37 at 6. The specific situation in which Conglom is alleged to have shipped or caused to have shipped into the U.S. a "replacement mounting bracket" in February 2024 is merely one "example" specifically pleaded by Plaintiff. *Id.* Conglom's characterization of it as the "only" allegation going to contributory infringement is not accurate. *See* ECF No. 49 at 13 ("[Conglom] seeks to convert allegations of 'an example' of such infringing shipments into an admission that no other instances of infringement have occurred."). And again, even if it were an accurate characterization, Conglom points to no authority supporting its bald assertion that that allegation alone would be insufficient to state a claim, and the Court declines to do its research for it. *See Prymer v. Ogden,* 29 F.3d 1208, 1214 (7th Cir. 1994) ("Such a conclusory assertion cannot take the place of analysis. This court will not expend its own resources to make [a party's] arguments for him." (citing *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991))).

For these reasons, the Court rejects Conglom's arguments.

4. **CONCLUSION**

For the reasons provided herein, the Court will deny both Conglom's and Home Depot's motions to dismiss.

Accordingly,

**IT IS ORDERED** that Defendant Conglom Hong Kong Limited's motion to dismiss, ECF No. 45, be and the same is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that Defendants The Home Depot, Inc. and Home Depot U.S.A., Inc.'s motion to dismiss, ECF No. 51, be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 15th day of July, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge