# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BROAN-NUTONE, LLC,

                    Plaintiff,

v.                                                    Case No. 23-CV-393-JPS

CONGLOM HONG KONG LIMITED,

                    Defendant.                        **ORDER**

## 1.    INTRODUCTION

Plaintiff Broan-NuTone, LLC ("Plaintiff") sues Defendant Conglom Hong Kong Ltd. ("Defendant")—an entity headquartered in Hong Kong—for patent infringement. ECF No. 69. Specifically, Plaintiff alleges that Defendant manufactures and imports into the United States range hoods which infringe Plaintiff's patents. *Id*. at 3. Now before the Court are Defendant's motion for summary judgment, ECF No. 84, and Defendant's motion for sanctions, ECF No. 81. For the reasons stated herein, the Court will grant Defendant's motion for summary judgment and dismiss this case with prejudice. It will also deny Defendant's motion for sanctions as moot and dismiss Defendant's counterclaims without prejudice.

Also before the Court is Plaintiff's motion to restrict document, ECF No. 93. For the reasons stated herein the Court will grant the motion.

## 2.    FACTS

At the outset, the Court notes that the parties failed to adhere to the Court's protocols for motions for summary judgment, *see* ECF No. 6 at 4–

5,[1] leaving the Court to piece together the record from the various filings on the docket, some related to summary judgment and others not.[2]

## 2.1 The Parties and Products

Relevant here, Plaintiff's claims involve U.S. Patent Nos. 10,539,329 patent (the "'329 patent"), the 11,519,611 patent (the "'611 patent"), and 12,025,316 (the "'316 patent") (collectively, the "Asserted Patents").[3] ECF No. 69 at 1. Plaintiff is the owner of all of these. ECF Nos. 86-2 at 2; 86-11 at 2; 86-15 at 2. The Asserted Patents each have the same title: Range Hood Installation System. ECF Nos. 86-2 at 2; 86-11 at 2; 86-15 at 2. The '316 patent is a continuation of the '611 patent, which itself is a continuation of the '329 patent. ECF Nos. 86-2 at 2; 86-11 at 2; 86-15 at 2. Indeed, each of the Accused Patents relates to range hood products and methods for facilitating installation of the same. The Accused Patents are intended to solve the problem posed by non-standardized cabinet sizes and varying mounting surfaces, which typically necessitates two installers. ECF No. 69 at 8; ECF No. 86-2 at 22; ECF No. 86-11 at 22; ECF No. 86-15 at 22.

---

[1]If the Court were to "only consider the single, agreed-upon statement of facts" submitted by the parties and the one page of itemized disputed facts permitted per party, it would have been impossible to analyze the parties' arguments as almost none of their supporting materials, including the patents, are contained therein. *See* ECF Nos. 88, 89, 97, 101, 107.

[2]Because of the sparse record here, the Court refers to the pleadings and other cases involving the parties for some facts, limiting such facts to those merely provided for background but which are not dispositive to the Court's analysis, and to facts that are not disputed in the parties' summary judgment briefs.

[3]The full names for these patents are included *infra* Section 2.3.

The Court takes judicial notice[4] that Plaintiff is a manufacturer of residential ventilation products, including range hoods. *See Berkley Nat'l Ins. Co. v. Broan-Nutone, LLC*, 23-CV-454-ECT, 2025 WL 965019, at *1 (D. Minn. Mar. 31, 2025) ("A Broan-manufactured ventilation fan was installed in the ceiling of the women's restroom."); *id.* at *5 (discussing another case where Plaintiff was a party that involved range hood's performance (citing *Hartford Ins. Co. v. Broan-Nutone, LLC*, No. 02 C 6043, 2004 WL 842516, at *4 (N.D. Ill. Apr. 19, 2004)); *Peerless Ins. Co. v . Broan-Nutone, LLC*, No. 1:19-cv-1699, 2020 WL 4194457, at *1 (W.D.N.Y. July 21, 2020) ("Broan is one of the principal manufacturers of residential and commercial ventilation products in the United States."); *Bobrow Palumbo Sales, Inc. v. Broan-NuTone, LLC*, 549 F. Supp. 2d 249, 252 (E.D.N.Y. 2008) ("Defendant Broan . . . manufactures a variety of household products, particularly kitchen range hoods . . . .").

Plaintiff is headquartered in Hartford, Wisconsin. ECF No. 69 at 2. The Court further takes judicial notice that Plaintiff's products are sold throughout the United States, with Home Depot being one its customers. *Id.* at 3.

Meanwhile, Defendant is a company headquartered in Hong Kong and is the alleged infringer in this case. ECF No. 29 at 1; *see generally* ECF No. 69. Defendant avers that (1) it "has no presence in the United States" and (2) Home Depot buys the allegedly infringing range hoods, namely model numbers QR254S, QR272S, QR272BS, and QR372 (the "Accused

---

[4]The Court may take judicial notice of public records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Case 2:23-cv-00393-JPS    Filed 10/02/25    Page 3 of 56    Document 108

Products"),[5] from Defendant in Thailand and then imports them into the United States, meaning that Home Depot takes full legal title of the range hoods in Thailand. ECF Nos. 29 and 30.

Images of what Plaintiff asserts are parts and components of the Accused Products are provided below. The Court notes, however, that it is unable to authenticate them, even on the lower summary judgment standard that requires only a prima facie showing of authenticity. *See infra* Section 3.2.2.





ECF No. 99-12. There are also schematics of the purported Accused Products where the entire document is in a foreign language. *See* ECF No. 99-8 (sealed exhibit showing the purported Accused Products). These

---

[5] That these model numbers are actually range hoods has not been established by anything within the record. However, Plaintiff's allegations concern the same model numbers. *See* ECF No. 69 at 3.

Case 2:23-cv-00393-JPS    Filed 10/02/25    Page 4 of 56    Document 108

schematics do not contain any text or images to suggest they relate to Defendant in any way. *See id.*

## 2.2 Plaintiff's Allegations

Plaintiff alleges that, at some unspecified point, Plaintiff and Defendant discussed the possibility of employing Defendant to manufacture certain of Plaintiff's products or component pieces, a proposal that the parties ultimately did not pursue. ECF No. 69 at 8. As part of those discussions, Plaintiff alleges it shared with Defendant design information concerning its patented "easy installation" technology. *Id.* Defendant denies there was any such meeting, including the allegation that any such information was shared during the same. ECF No. 72 at 11–12.

In May 2022, Defendant admits it proposed a licensing agreement for one of Plaintiff's patents at issue. *Id.* at 8–9 ("[Defendant's counsel confirmed that Defendant viewed the '329 patent as invalid and not infringed but nevertheless proposed a . . . license agreement."). Apparently, that proposition also fell through, although both the Amended Complaint and the Answer to the Amended Complaint are silent on that point. *See generally* ECF No. 69; ECF No. 72. In any event, at some point after that meeting, Plaintiff alleges that Defendant copied Plaintiff's patented technology and began manufacturing and selling its own competing range hood products, namely the Accused Products. ECF No. 69 at 8. Defendant denies that allegation. ECF No. 72 at 12.

Plaintiff brings three counts, alleging that Defendant has infringed on: "at least claims 1 and 15 of the '329 patent," *id.* at 9–12 ("Count One"); "at least claim 1 of the '611 patent," *id.* at 12–15 ("Count Two"); and "at least claim 1 of the '316 patent," *id.* at 15–18 ("Count Three"). As to each, Plaintiff

alleges direct and induced infringement as well as contributory infringement by Defendant. *Id*. at 9–18.

## 2.3 The Patents

The Court takes judicial notice of the fact that Plaintiff is the applicant and assignee of the Accused Patents.[6] *See* ECF No. 86-2 at 2; ECF No. 86-11 at 2; ECF No. 86-15 at 2. The suggested purpose of the Accused Patents is to speed up the installation process by requiring only one rather than two installers. ECF No. 86-2 at 22; ECF No. 86-11 at 22; ECF No. 86-15 at 22.

### 2.3.1 The '329 Patent

Claims 1 and 15 of the '329 patent—which was issued on January 21, 2020—are at issue in this case.[7] ECF No. 69 at 9–12; ECF No. 86-2 at 29–30. Claim 1 of the '329 patent is as follows:

> A range hood mountable to an underside mounting surface of a cabinet, comprising:
>
> a base section defining a thickness and having an upper surface and defining at least one support opening on the upper surface; and
>
> a mounting plate mountable to the cabinet at the underside mounting service and including a base portion defining a thickness and having at least one support feature

---

[6] The Court can take judicial notice of patents and their prosecutorial history. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 14-CV-1466, 2016 WL 8201779, at *5 (E.D. Wis. Sept. 30, 2016) ("The Court may take judicial notice of the contents of the [relevant patent application] and its prosecution or file history." (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990))).

[7] Although Plaintiff asks the Court to treat Claim 1 as representative, the Court declines to do so because the prosecutorial history makes clear that language in the '611 patent clearly corrects flaws within the '329 patent, making '329 a poor representation of the later patents. *See infra* Section 3.2.1.1; *infra* note 18.

Case 2:23-cv-00393-JPS    Filed 10/02/25    Page 6 of 56    Document 108

configured to be inserted through the corresponding support opening to engage the upper surface of the base section to hold the base section proximate to the cabinet before being secured thereto by at least one fastener;

wherein the support feature comprises a tongue formed from material of the base portion and displaced from the base portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section of the range hood;

wherein the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue.

ECF No. 86-2 at 29. Claim 15 of the '329 patent is as follows:

A method of mounting a range hood to an underside mounting surface of a cabinet, comprising:

coupling a base portion of a mounting plate to the cabinet at the underside mounting surface, wherein the base portion includes at least one supported feature;

engaging the support feature to a support opening in an upper surface of the range hood such that the mounting plate supports the range hood and positions the range hood proximate the underside mounting surface, wherein the support feature comprises a tongue formed from material of the base portion displaced from the base portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section of the range hood and the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue; and

inserting a fastener through a mounting feature in the upper surface of the range hood and through a hood opening in the base portion to couple the range hood to the mounting plate.

*Id.* at 29–30.

To support their respective claims, both parties cite part of the same specification of the '329 patent, but neither party cites it in full. ECF No. 85 at 20–21; ECF No. 98 at 29; ECF No. 105 at 12. In full, it reads:

The exemplary embodiment support feature **38** depicted in FIGS. **3**A-**3**C comprises a tongue formed from material of the base portion and displaced from the base portion to define a void in the base portion. That tongue has a proximal end extending from the base portion to a distal end displaced from the base portion a distance that is greater than a thickness of the base section of the range hood. Additionally, the tongue proximal end extends away from the base section and continues to a tongue crest. The tongue then extends from the crest to a trough and then from the trough to the distal end of the tongue. The crest is displaced from the base portion and the trough is not farther from the base portion than the base section thickness.

ECF No. 86-2 at 25.

Figures 3A, 3B, and 3C, to which the above specification refers, are reproduced below:



FIG. 3A



FIG. 3B



FIG. 3C

ECF No. 86-2 at 5–6.

The prosecutorial history of the '329 patent is also relevant to the Court's analysis. Plaintiff's first applied for the '329 patent in May 2016. ECF No. 86-5 at 2. That initial application was assigned the number 15/159,571, which is confirmed by the Court's review of the final patent. ECF No. 86-2 at 2 (listing the application number as 15/159,571). Plaintiff proposed the following claim language for Claim 1 in its initial application:

> (Currently amended) A range hood mountable to an underside mounting surface of a cabinet, comprising:
>
> a base section defining a thickness and having an upper surface and defining at least one support opening positioned on the upper surface; and
>
> a mounting plate mountable to the cabinet at the underside mounting surface and including a base portion

> defining a thickness and having at least one support feature configured to be inserted through the corresponding support opening to engage the upper surface of the base ~~section~~ portion to hold the base ~~section~~ portion proximate to the cabinet before being secured thereto by at least one fastener;
>
> wherein the support feature comprises a tongue formed from material of the base portion and displaced from the base portion to define a void in the base portion, the tongue having a proximal end extending from the base portion and a distal end displaced from the base portion a distance greater than the thickness of the base section range hood.

ECF No. 86-5 at 18 (modifications in original). This language was rejected for the reasons indicated below.

> Claims 1-20 are rejected under 35 U.S.C. 112(a)[8] or 35 U.S.C. 112 (pre-AIA), first paragraph,[9] as failing to comply with the written description requirement. The claim(s) contain subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.
>
> It seems the "base section" and "base portion" are interchangeably used making it unclear which feature is

---

[8] 35 U.S.C. § 112(a) provides that a patent "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear and concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is mostly nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

[9] 35 U.S.C. § 112 (pre-AIA), paragraph one, provides that a patent "specification shall contain written description of the invention, and of the manner and process of making and using it, in such clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is mostly nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

exactly being referred to. The specification generally relates the base portion to be a feature of the mounting plate but also mentions the base portion to be part of the range hood . . . . Clarification is requested.

*Id.* at 7 (footnotes added). Plaintiff's proposed language was also rejected for the following reason:

Claim 1 rejected under 35 U.S.C. 112(b)[10] or 35 U.S.C. 112 (pre-AIA), second paragraph,[11] as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

Claim 1 recites the limitation "a base section" and "…<u>a base portion</u> having at least one support feature configured to be inserted through the corresponding opening to engage the upper surface of the base portion to hold the base portion…" It is unclear whether "a base section" and "a base portion" are referring to the same feature or different features. Additionally, how can the base portion engage itself? Clarification is requested. To further prosecution, examiner interprets the base section is related to the appliance and base portion is related to the mounting plate. The base portion is secured to the cabinet through a fastener. ECF No. 86-5 at 7-8.

*Id.* at 8 (footnotes added).

---

[10]35 U.S.C. § 112(b) provides that a patent "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."

[11]35 U.S.C. § 112 (pre-AIA), paragraph two, provides that a patent "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

Case 2:23-cv-00393-JPS    Filed 10/02/25    Page 11 of 56    Document 108

### 2.3.2 The '611 Patent

The '611 patent was issued on December 6, 2022. ECF No. 86-11 at 2.

Claim 1 of the '611 patent—which is the only claim of this patent at issue

here, ECF No. 69 at 12–15—reads:

> A range hood mountable to an underside mounting surface
> of a cabinet, comprising:
>
> a range hood base section defining a thickness and having an
> upper surface defining at least one support opening, and
>
> a mounting plate mountable to the cabinet, the mounting
> plate comprising a base portion having at least one
> tongue, the tongue (i) having a proximal end extending
> from the base portion to a crest, (ii) extending from the
> crest to a trough, and (iii) extending from the trough to a
> distal end of the tongue which is displaced from the base
> portion a distance greater than the thickness of the base
> section of the range hood;
>
> wherein the distal end of the at least one tongue is configured
> to be inserted through the support opening of the range
> hood base section to hook the range hood as the range
> hood is moved from the distal end of the at least one
> tongue toward the proximal end of the at least one tongue.

ECF No. 86-11 at 29.

### 2.3.3 The '316 Patent

The '316 patent was issued July 2, 2024. ECF No. 86-15 at 2. Claim 1

of the '316 patent—the only claim of this patent that is at issue in this case,

ECF No. 69 at 15–18—is as follows:

> A method of mounting a range hood to an underside
> mounting surface, comprising:
>
> providing a mounting plate comprising a base portion and at
> least one support feature;
>
> coupling the mounting plate to the underside mounting
> surface;

providing a range hood comprising an upper surface defining at least one support opening;

engaging the support feature to the support opening such that the mounting plate can support the weight of the range hood; and

inserting a fastener through the upper surface of the range hood to couple the range hood to the base portion of the mounting plate or the underside mounting surface

wherein the support feature can support the weight of the range hood to allow an installer to insert the fastener without the added burden of supporting the weight of the range hood.

ECF No. 86-15 at 28–29.

## 3. SUMMARY JUDGMENT

### 3.1 Legal Standard

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a) and *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The Court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit

instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [its] case is convincing, [it] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (internal quotation omitted). Rather, denials of facts must "'cite specific evidentiary materials justifying the denial' or be disregarded." *Id.* (quoting *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000)).

### 3.2 Analysis

Defendant's summary judgment motion sets forth two principal affirmative defenses—anticipation and obviousness—and in the alternative, a theory of non-infringement. ECF No. 85 at 8–15; 25–27. Defendant also offers the affirmative defense of indefiniteness, the analysis of which is tied to its theory of non-infringement. *Id.*

The Court begins by addressing whether the record establishes infringement of the Accused Patents, starting with Claim 1 of the '329 patent, before turning to the indefiniteness defense Defendant argues in the alternative. The Court then analyzes why authentication issues are dispositive to which party wins on the infringement claims for the '611 and '316 patents (Counts Two and Three).

### 3.2.1 Infringement

Whether the '329 Patent has been infringed turns on: "(1) claim construction to determine the scope of the claims, followed by (2) [a] determination [of] whether the properly construed claim encompasses the accused structure." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Only one dispute concerning claim construction is currently live[12] and it concerns the final limitation in the '329 patent: "wherein the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue." ECF No. 85-2 at 29; *see also* ECF No. 85 at 20–23; ECF No. 98 at 11, 26–30; ECF No. 105 at 11–14.

### 3.2.1.1 Claim Construction

"Victory in an infringement suit requires a finding that the patent claim covers the alleged infringer's product or process, which in turn necessitates a determination of what the words in the claim mean." *Markman v. Westview Instruments, Inc*., 517 U.S. 370, 374 (1996) (citations and quotation marks omitted). The construction of patent claims, which requires determining the meaning and scope of the claims, "is a matter of law for the court." *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 988 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp*., 415 F.3d 1303, 1312

---

[12]While the parties initially also disputed the interpretation of the term "providing" as used in Claim 1 of the '316 patent, in its reply, Defendant expressly changed its position, conceding Plaintiff's interpretation. ECF No. 105 at 16 ("In light of the Federal Circuit case law cited by [Plaintiff], [Defendant] waives its argument related to claim construction of the term 'providing' and infringement of the '316 patent.").

(Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) and citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) and *Markman*, 52 F.3d at 980); *see also Vitronics*, 90 F.3d at 1582 ("First, we look to the words of the claims themselves . . . to define the scope of the patented invention.").

When interpreting claim terms, the court first looks to the intrinsic evidence, which includes the claims themselves, the specification(s), and the prosecution history. *See Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("[I]n interpreting an asserted claim, the [C]ourt should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and . . . the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."). Within that intrinsic evidence, courts first "look to the claim language." *Id*. (citing *Vitronics*, 90 F.3d at 1582 and *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). When reviewing the claims, the specification, or the prosecution history, if these intrinsic sources clearly define a claim term, that definition shall apply even if it differs from the term's ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (citing *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999) and *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)). Although claims must be read in light of the specification, the Court should not limit a claim by restricting its scope based on any embodiment within the specification. *Phillips*, 415 F.3d at 1323. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id*. at 1313.

In addition to relying on intrinsic evidence in ascertaining the scope of an invention's claim, the Court also may look to extrinsic evidence such as expert and inventor testimony, dictionaries, and learned treatises. *Id*. at 1317 (citing *Markman*, 52 F.3d at 980); *see also Pitney Bowes*, 182 F.3d at 1308. Courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322–23 (quoting *Vitronics*, 90 F.3d at 1584 n.6).

According to Defendant, the limitation wording of "wherein the tongue extends away from the base section at the tongue proximal end to a crest, the tongue extending from the crest to a trough and then from the trough to the distal end of the tongue," ECF No. 86-2 at 29, "means that the tongue begins by moving in a direction away from the base section." ECF No. 85 at 20. To make this argument, Defendant relies, in part, on the specification noted above, *see supra* Section 2.3.1,[13] and a dictionary

_____

[13]For convenience, the specification is reproduced here:

The exemplary embodiment support feature 38 depicted in FIGS. 3A-3C comprises a tongue formed from material of the base portion and displaced from the base portion to define a void in the base portion. That tongue has a proximal end extending from the base portion to a distal end displaced from the base portion a distance that is greater than a thickness of the base section of the range hood. Additionally, the tongue proximal end extends away from the base section and continues to a tongue crest. The tongue then extends from the crest to a trough and then from the trough to the distal end of the tongue. The crest is displaced from the base portion and the trough is not farther from the base portion than the base section thickness.

ECF No. 86-2 at 25.

definition,[14] to conclude that the proximal end is where the tongue connects to the base portion of the mounting plate. ECF No. 85 at 20.

In opposition, Plaintiff argues the "tongue extends 'away from' the base section of the range hood to a crest once inserted through the upper surface of the range hood (i.e. base section)." ECF No. 98 at 29. Moreover, Plaintiff argues that the definition offered by Defendant is overly restrictive; Plaintiff instead construes the "proximal end," when considering the specification noted above, *see supra* note 13, as the "portion of the tongue which terminates at the crest." *Id.* (emphasis omitted). Putting these ideas together, Plaintiff argues that the claim is properly construed as the "proximal end extend[ing] from the base portion of the mounting plate, through the base section of the range hood, away from that base section, to terminate in a crest." *Id.* (citing ECF No. 86-2 at 29) (internal quotation marks omitted). In Plaintiff's view, accepting Defendant's construction would eviscerate the claim's requirement that the tongue be inserted through the hood's base section, require the mounting bracket to be affixed upside-down, and exclude embodiments disclosed in the patent. ECF No. 98 at 28–29. In support of this argument, Plaintiff also refers to additional specifications, *id.* at 27–28, which are irrelevant to the interpretation of the disputed language.[15]

---

[14]Defendant cites to Merriam-Webster's definition of "proximal" which is as follows: "next to or nearest the point of attachment or origin, a central point, or the point of view." ECF No. 85 at 20 (citing *Proximal*, MERRIAM-WEBSTER DICTIONARY (2015)).

[15]The Court agrees with Defendant that the additional specifications cited by Plaintiff have no bearing on the dispute here, such as the one that states the "the support feature can be inserted through an opening in the range hood to hook the range hood such that the range hood can be lifted and engaged to the support feature without tools or separate fasteners." ECF No. 98 at 27–28 (quoting 86-2 at

In reply, Defendant reaffirms its claim construction, including its definition of proximal. ECF No. 105 at 11–12. Defendant asserts the additional specifications referred to by Plaintiff are irrelevant, and that there is ultimately no disclosure of the orientation of the tongue after insertion. *Id.* at 13. In addition, Defendant disputes that the bracket would have to be affixed upside-down and that Plaintiff established Defendant's construction would exclude any embodiments specified in the '329 patent. *Id.* at 13–14. Finally, Defendant reiterates that Plaintiff's construction would be nonsensical and that Defendant's overall reading is proper. *Id.* at 14.

First, the Court agrees with Defendant that Plaintiff's construction makes absolutely no sense. Defendant is correct that Claim 1 of the Patent '329 "does *not* disclose the orientation of the tongue '*once inserted through the upper surface of the range hood.*'" ECF No. 105 at 13 (quoting ECF No. 98 at 28). It only discloses that the "tongue extends away from the base section at the tongue proximal end." ECF No. 86-2 at 29. At no point does the phrase "once inserted," or anything similar, appear in the claim. *See generally id.* The claim does not recite the verb "extend" twice; only Plaintiff's construction does so. ECF No. 98 at 30 ("A [Person of Ordinary Skill in the Art ("POSA")] would understand the plain and ordinary meaning of this claim language . . . to mean that the 'proximal end' **extends** to a crest, and in **extending** to this crest the tongue's proximal end moves 'away from' the base section of the range hood." (emphasis added)). It would be improper for the Court to read in "extends" twice or to read in an orientation post-

_____

22). None of the specifications in this paragraph of Plaintiff's brief address the tongue's shape or orientation but merely attempt to persuade the Court that the term "away" must be deleted or introduced later because otherwise the tongue is not useable. As discussed later in this Section, however, this argument is not persuasive.

insertion, which is what Plaintiff's rendition proposes. Plaintiff's definition would, moreover, create impossible geometry. Using Plaintiff's definition of proximate end as "the portion of the tongue which terminates at the crest," ECF No. 98 at 29 (emphasis omitted), would render it impossible for that same portion to also extend beyond the crest, as Plaintiff later suggests. ECF No. 98 at 29 ("the tongue proximal end extends away from the base section *and continues to* a crest." (quoting ECF No. 86-2 at 25)); *see, e.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F. 3d 945, 949–51 (Fed. Cir. 2006) (rejecting claim interpretations that would render either meaningless or superfluous words or limitations explicitly recited in claim).

Second, the specification in dispute, *see supra* Section 2.3.1 and note 13, reaffirms Defendant's view that, while the tongue's proximal end may extend from the base portion of the mounting plate, it nonetheless extends away from the base section.[16] Indeed, in practice, a tongue that extends away from the base section may very well render it unusable, as the base section is the very part of the hood that the tongue is securing, a fact that Plaintiff admits, ECF No. 98 at 27 (citing ECF No. 86-2 at 22, 24, 25);

---

[16]Given that the Patent Office required Plaintiff to distinguish between the base portion and base section before it would issue the '329 patent, *see supra* Section 2.3.1, no genuine argument can be made that base portion and base section are the same, and, indeed, neither party has advanced that argument. *See* ECF No. 85-6 at 7. Indeed, there is an important distinction in the terms, demonstrated by the Patent Examiner's request for clarification on this point: "It seems the 'base section' and 'base portion' are interchangeably used making it unclear which feature is exactly being referred to. The specification [as it was drafted in the original application for the '329 patent] generally relates the base portion to be a feature of the mounting plate but also mentions the base portion to be part of the range hood . . . ." ECF No. 86-5 at 7. When reviewing the '329 now, however, it is apparent that that the ultimate '329 patent's language resolves this confusion because the claim language reveals the mounting plate includes a base portion with a hook that allows it to connect to the base section. *See* ECF No. 86-2 at 29.

however, such an error is not for the Court to remedy now, especially for the reasons that follow.

In *Chef America, Inc. v. Lamb-Weston, Inc.*, a baking expert testified that "[t]he limitation in claims 1 and 8 'heating the resulting batter-coated dough to a temperature in the range of about 400° F to 850° F' (and the similar limitation in claim 6 specifying a range of 680° F to 850° F) mean to me, as a person of ordinary skill in the art, that the batter-coated dough is placed in an oven that has been set to a temperature in the range of about 400° F to 850° F, and remains in the oven for the period within the time range recited in the claim." 358 F.3d 1371, 1375 (Fed. Cir. 2004). The patent at issue provided two examples and each stated "that the dough product is placed in a multi-layered convection oven and baked 'at temperatures' or 'at a temperature' of 680° F. to 850° F." *Id.* at 1372 (citing the patent at issue). Essentially, he attempted to testify that the 400° F to 850° F referred to the oven temperature rather than the temperature of the dough product itself.

The district court there found, and the Federal Circuit affirmed, that the expert's testimony "read the claim in accordance with the construction proffered by [the] plaintiff, [but did] so not because the words ha[d] special meaning to him, but because it [wa]s well-known that raising the temperature of a dough product itself to such high temperatures would result in an unusable product." *Id.* at 1375 (internal brackets and quotation marks omitted). The Federal Circuit rejected the plaintiff's argument then, which essentially attempted to construe its patent's terms to resolve a flaw in the patent itself.

Plaintiff similarly argues here, asking the Court to redraft what is clearly written to enforce the flawed patent.[17] The Court rejects this attempt. The language of Claim 1 of the '329 patent indicates that the proximal end—i.e., the beginning—of the tongue is extends away from the base section. While this reading would likely render the hook inoperable, as *Chef America* indicates, when the claim language is clear, the Court should not fix it merely to make the patent functional. To a similar point, that the diagrams would not make sense using Plaintiff's construction does not necessarily override the claim language. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed. Cir. 1998) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988) and citing *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.3d 855, 865 (Fed. Cir. 1988))).

Third, the prosecutorial history strongly suggests that Plaintiff knew that inclusion of the term "away" from the base section was a mistake.[18] The '611 patent, a continuation of the '329 patent[19] that removed that term

---

[17]Plaintiff's reference to the other specifications, which have no relevance here, supports that Plaintiff's argument attempts to redraft its flawed patent. *See supra* note 15.

[18]The '611 patent's Claim 1 writes that the proximal end of the tongue "extend[s] from the base **portion**." ECF No. 86-11 at 2 (emphasis added). Such language is completely different from that in the '329 patent, which claims the "tongue extends away from the base **section**." ECF No. 86-2 at 29 (emphasis added). In other words, the "base section" is not even a reference point in defining the tongue in the '611 patent and the term "away" is not used. *See generally* ECF No. 86-11.

[19]*See* ECF No. 86-11 at 2 (noting it is a "[c]ontinuation of application No. 15/159,561, filed on May 19, 2016, now Pat. No. 10,539,329.").

altogether, was issued on December 6, 2022. Plaintiff filed this lawsuit just three months later in March 2023. The timing here, along with other misconduct by Plaintiff,[20] suggests that Plaintiff pursued enforcement of a flawed patent, the '329 patent, by bringing a lawsuit in which the corrected '611 patent was also included in an effort to tie the hands of the Court. Instead, Plaintiff's conduct, including its claim construction arguments that require substantial reworking of the claim language to avoid creating absurd results, underscores a strategic effort to hedge between versions of its claims as present in different patents.

Fourth, the extrinsic evidence the Court considers confirms Defendant's claim construction. Contrary to Plaintiff's bald assertion that Defendant's use of "a definition from a general use dictionary" is "improper[]," ECF No. 98 at 26, the Court is entitled to utilize such a definition, provided doing so does not contradict any definition found in or clearly ascertained from reading the patent documents. *Phillips*, 415 F.3d at 1322–23 (citation omitted). Plaintiff does not provide any other definition that contradicts Merriam-Webster's definition of "proximal" as "next to or the nearest point of attachment or origin." *See generally* ECF No. 98. Instead, Plaintiff argues that such a definition, combined with Defendant's remaining construction, contradicts a proper reading of the patent documents because, if applicable, it would mean that the mounting bracket would be affixed upside down. ECF No. 98 at 26–28. For the reasons already discussed, that argument is not persuasive, notwithstanding that Defendant's construction likely renders the '329 patent non-functional.

---

[20] *See infra* Section 4.

Case 2:23-cv-00393-JPS     Filed 10/02/25     Page 23 of 56     Document 108

Finally, the Court has no occasion to consider the testimony of experts of each side because the intrinsic evidence provides sufficient information to construe the disputed claim language without the need for expert testimony. In fact, in a case like this, the Court should end its claim construction analysis here, because no "genuine ambiguity" in the disputed language exists. *Vitronics*, 90 F.3d at 1584 ("Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as expert testimony, in order to construe claim").

For the foregoing reasons, the Court accepts Defendant's construction that the "tongue begins by moving in a direction away from the base section," ECF No. 85 at 20, and declines Plaintiff's construction that the "'proximal end' extends to a crest, and in extending to this crest the tongue's proximal end moves 'away from' the base section of the range hood." ECF No. 98 at 30.

### 3.2.1.2 Applying the Claim Construction

The Court now turns to step two of the analysis, identifying whether there has been infringement of the '329 patent given this construction. Defendant argues that "CHK Range Hoods"[21] move away from the base portion of and towards the base section. ECF No. 85 at 25. Plaintiff has no genuine argument in response,[22] merely reiterating the same arguments it

---

[21]Defendant does not concede in its briefing that its products ("CHK Range Hoods") are or contain as components the Accused Products.

[22]Indeed, Plaintiff's only argument in its '329 analysis is a frivolous one that relies on an incomplete quote it wrongly construes as an admission. Plaintiff argues that Defendant admits that the tongue of the Accused Products extends away from the base section. ECF No. 98 at 30 (citing ECF No. 85 at 25). However, what Defendant actually argued is that its products have a "tongue on the

presented in its claim construction analysis, which the Court has already deemed unpersuasive. ECF No. 98 at 20; *see supra* Section 3.2.1.1.

Also defeating its infringement claims is the fact that Plaintiff has not introduced any admissible evidence of the Accused Products. As discussed *infra* Section 3.2.2, the Court cannot consider unauthenticated submissions, which is all that exists in the record of the purported Accused Products. Accordingly, even if Plaintiff had responded to Defendant's non-infringement arguments, the Court finds itself in the position of not having any Accused Products to analyze against the claim construction. Plaintiff has, therefore, not met its burden of persuasion as to infringement. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("[The patentee], alleging infringement . . . , has the burden of persuasion that [the defendant] infringes under . . . [a] preponderance of the evidence [standard].")

Accordingly, the Court will grant summary judgment in favor of Defendant as to Count 1 (concerning claim 1 and claim 15 of the '329 patent)[23] because no reasonable jury could—just as the Court cannot—find that the Accused Products infringed the patent when there is no admissible evidence of what the Accused Products look like or how they function. For the same reason, the Court must grant summary judgment to Defendant as

---

mounting plate [that] extends *away* from the base *portion* of the mounting plate and *towards* the base *section* of the range hood when mounted." ECF No. 85 at 25. The difference between the base section and base portion, *see supra* Section 3.2.1.1, makes all the difference in understanding this comment by Defendant and showing how Plaintiff's argument is frivolous.

[23]Plaintiff engages in neither step one (claim construction) or step two (application of the claim construction) for claim 15, despite the analysis proposed by Defendant in its briefs and claim charts. *See generally* ECF No. 98. Accordingly, Plaintiff forfeits its infringement arguments as to claim 15 of the '329 patent.

to Count Two (concerning claim 1 of the '611 patent) and Count Three (concerning claim 1 of the '316 patent).

### 3.2.2 Authentication Issues

For Plaintiff to survive summary judgment, it cannot rely on the pleadings but rather must "come forward with *appropriate* evidence demonstrating that there is a pending dispute of material fact." *Waldridge*, 24 F.3d at 921 (emphasis added). That is an issue here, because the documents Plaintiff introduces as the purported Accused Products raise authentication issues. Authentication is an issue of admissibility, because Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This requirement is satisfied "if evidence has been introduced from which a reasonable juror could find that the document is authentic." *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006).

"At the summary judgment phase, the Court may consider unauthenticated documents 'if it appears that they are capable of authentication at trial.'" *See Montoya v. Mitchell*, No. 1:17-CV-01796, 2024 WL 1328799, at *3 (N.D. Ill. Mar. 28, 2024) (quoting *Remmer v. Wexford Health Sources, Inc.*, No. 19-CV-00420-NJR, 2021 WL 535542, at *4 (S.D. Ill. Feb. 12, 2021) and citing *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) and *Boyce v. Wexford Health Sources, Inc.*, No. 15 C 7580, 2017 WL 1436963, at *3 (N.D. Ill. Apr. 24, 2017)). For the Court to consider such documents, "[o]nly a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury." *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) (citing *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997)).

Federal Rule of Evidence 901 offers several non-exhaustive ways that a party can authenticate evidence. Rule 901(b)(3), for example, allows an expert witness or a trier of fact to authenticate evidence through comparison to an authenticated item. Rule 901(b)(4) allows evidence to be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Then there is self-authentication: Rule 902(7) provides that "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" need not be supported by extrinsic evidence of authenticity. Lastly, the production of an exhibit by opposing counsel can be deemed implicit authentication. *See United States v. Lawrence*, 934 F.2d 868, 870–72 (7th Cir. 1991); *Montoya v. Mitchell*, 2024 WL 1328799, at *3 (denying a motion to strike unauthenticated evidence because the party moving to strike "relie[d] on the very same records to which he object[ed]").

Here, as Defendant notes, none of the items attached to Plaintiff's opposition brief that Plaintiff claims to be the Accused Products reveal any kind of inscription or other mark that would enable self-authentication under Rule 902(7). ECF No. 105 at 15 (citing ECF No. 98 at 34 (citing ECF No. 100 at 28-32). As such, the Court must rely on expert testimony or circumstantial evidence to determine whether Plaintiff has made a "prima face showing of genuineness." *Fluker*, 698 F.3d at 999 (citation omitted). There are only two exhibits in the record that Plaintiff claims are the Accused Products: ECF Nos. 99-8 and 99-12.[24]

---

[24]While there are additional purported images of the Accused Products attached to non-operative complaints, these exhibits are not part of the record for the Court to consider because. "[a]ny amended complaint must be complete in and

ECF No. 99-8 is an exhibit attached to the declaration of Plaintiff's counsel and purportedly shows "true and correct copies of the technical specifications for the mounting brackets of the Accused Products manufactured in Thailand." ECF No. 99 at 2 (citing ECF No. 99-8). Authenticating this exhibit requires a representative with personal knowledge of the contents, comparison by expert witness to an authenticated specimen of the Accused Products, or distinctive characteristics "together with all the circumstances." *See* Fed. R. Evid. 901(b)(1), (3), (4).

The images in ECF No. 99-8 cannot be self-authenticated. First, the text of this document is in a foreign language. There is nothing within the exhibit, therefore, that the Court is able to read and decipher. To the extent product numbers or model numbers may appear inside ECF No. 99-8 in English, they are superimposed on the document, along with the inscription for "Attorney's Eyes Only," suggesting that the document has been edited after the fact. Accordingly, such marks cannot be construed as being made in the course of business, as required by Rule 902(7).

As to other methods of authentication, nothing suggests that Plaintiff's counsel may be the sole witness to authenticate the Accused Products under Rule 901(b)(1). First, Plaintiff's counsel did not use the magic words given by 28 U.S.C. § 1746, namely that the representation he

---

of itself without reference to the original complaint. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.- Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In the case of amendment, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). The Court will accordingly decline to consider exhibits attached to Plaintiff's original complaint, ECF No. 1, and Plaintiff's first amended complaint, ECF No. 37.

made asserting that ECF No. 99-8 depicts the Accused Products was made "under the declaration of perjury." In fact, no attempt at all is made to incorporate equivalent language in the declaration.[25] *See generally* ECF No. 99. On that basis alone, therefore, the Court cannot consider the same as being within the record for the purposes of summary judgment. *See Kallal v. CIBA Vision Corp.*, 779 F.3d 443, 446 (discussing how a formal affidavit or equivalent is necessary on summary judgment and noting that a "'written un-sworn declaration . . . subscribed in proper form as true under penalty of perjury' may 'substitute for an affidavit.'" (quoting 28 U.S.C. § 1746); *see also Zavala-Alvarez*, 617 F. Supp. 3d at 886 ("An unsworn statement that lacks a certification under penalty of perjury has no evidentiary value . . . . From an evidentiary standpoint, it's weightless."); *Sweet v. Higgins*, No. 23-cv-980-pp, 2025 WL 985668, at *5 (E.D. Wis. Mar. 31, 2025) (citing *Hall v. Wisconsin*, No. 18-cv-895, 2020 WL 533749, at *2 (E.D. Wis. Feb. 3, 2020) and *Zavala-Alvarez*, 617 F. Supp. at 866). Moreover, even if such language were present, there is no indication that Attorney Bergert can be trusted as a witness. *Olson v. Champaign County*, 784 F.3d 1093, 1102 (7th Cir. 2015) (discussing how attorneys act as witnesses, not lawyers, when they submit a statement made under penalty of perjury to the court). Rather, the Court has good reason to doubt his word, as he has previously misrepresented several facts to the Court. *See infra* Section 4.

---

[25] It is irrelevant that Plaintiff titles ECF No. 99 as a "declaration," because the absence of a declaration that the statements therein are made under penalty of perjury means it is *not* a declaration, nor can the Court consider is as such. *Zavala-Alvarez v. Darbar Mgmt.*, 617 F. Supp. 3d 870, 886 (N.D. Ill. 2022) ("It does not matter what a document is called. If a statement does not meet the requirements for an affidavit or a declaration, then it isn't an affidavit or a declaration. The label doesn't control. The package, not the packaging, is what matters.").

Second, as alluded to earlier, to the extent distinctive characteristics are discernible from the images here, such that authentication might be possible under Rule 901(b)(4), the Court cannot make any such conclusion because the text of 99-8 is in a foreign language. Even though 99-8 contains images, and not just text, those images are of no use without an explanation that the Court can read.

Third, there is no authenticated "specimen" in the record for which an expert could authenticate 99-8 by way of comparison under Rule 901(b)(3). And finally, Defendant has not reproduced or relied on these images anywhere so as to waive the issue requiring proper authentication.

For all these reasons, the exhibit in ECF No. 99-8 is not admissible for consideration at the summary judgment stage, as Plaintiff has not made even a prima facie showing of its genuineness.

Similar defects plague ECF No. 99-12, which purports to show zoomed in images of the Accused Products themselves. ECF No. 99 at 3 (citing ECF No. 99-12). The same cannot be self-authenticated as there is no inscription and there is no superimposed designation, let alone any kind of indication that the images were made during the ordinary course of business. *See* Fed. R. Evid. 902. Plaintiff must have made a prima facie showing that the images in ECF No. 99-12 can be authenticated at trial via a method in Rule 901, and for the reasons stated below, it cannot do so.

First, there is no witness to testify to what the images in ECF No. 99-12 are outside of Attorney Bergert, who the Court does not consider to be a proper channel of authentication, as discussed above. To the extent Plaintiff's expert, Dr. Benden, refers to these images in his declaration, he does not do so for the purpose of authentication, but only for the purpose of evaluating whether certain patents have been infringed. ECF No. 100 at

28–32. And, in fact, Dr. Benden's analysis depends on these images being what Attorney Bergert claims. *Id.* at 2 ("The opinions I express in this declaration have been formed based on my review of the materials cited in this declaration, as well as my education, training, knowledge, and experience."). Second, while Dr. Benden indicates that he has installed "a range hood before," he does not indicate that he installed one of Defendant's products, much less one of the specific Accused Products. Without more, there is no way to conclude that the images shown in ECF No. 99-12 are distinctive features of the Accused Products. Similar to the analysis with ECF No. 99-8, because there is no authenticated specimen with which an expert could compare the images in ECF No. 99-12, they cannot be authenticated under Rule 901(b)(3). And finally, Defendant does not reproduce the image anywhere in its briefs, declarations, or exhibits such that it can be found to have waived the issue of authentication by relying on these images.

Without either ECF Nos. 99-8 and 99-12, Plaintiff has provided no admissible evidence showing what the Accused Products look like, much less that they are owned by Defendant such that it can be found to have infringed. As such, Plaintiff has not supported its claims of infringement as to any of the claims in patents '316, '329, or '611 and, therefore, cannot survive Defendant's motion for summary judgment.

### 3.3 Summary Judgment Conclusion

Given that the Court has found that Plaintiff has not provided admissible evidence from which a reasonable jury could find that Defendant has infringed on the Accused Patents, it will grant Defendant's motion for summary judgment in full and dismiss Plaintiff's claims with prejudice.

**4. MOTION FOR SANCTIONS**

Defendant also moves for sanctions. ECF No. 81. Defendant grounds its motion for sanctions in various alleged instances of misconduct on the part of Plaintiff's counsel. *See generally* ECF No. 82. As relief, Defendant seeks dismissal, an order prohibiting Plaintiff from offering any evidence that Defendant sells or offers to sell the accused product in the United States, or any other relief the Court deems appropriate. *Id.* For the reasons discussed herein, the Court will make the finding that the sanction of dismissal with prejudice is warranted based on Plaintiff's counsel's sanctionable conduct, but will nevertheless deny the motion as moot because the Court has separately awarded Defendant summary judgment on the merits. *See supra* Section 3.

**4.1 Authority to Sanction**

The Court has both inherent and rule-based authority to impose sanctions. The latter refers to Rule 11 of the Federal Rules of Civil Procedure, which authorizes the imposition of sanctions in circumstances involving, inter alia, misrepresentations to the court. "The application of Rule 11 to the facts and circumstances of a particular case is an exercise of the trial court's discretion . . . ." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1028 (7th Cir. 1999)) (citing *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996)).

Rule 11 provides that while a motion for sanctions is to be served under Rule 5, it "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). In other words, before filing a Rule 11 motion for sanctions with the court, the moving party must serve the motion on the

party against whom it is seeking sanctions and allow that party 21 days to address the underlying violations. This safe harbor provision exists to give an alleged violator notice and an opportunity to correct the action. *See N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 886 (7th Cir. 2017).

In addition to its authority to impose Rule 11 sanctions, a court has the "inherent power to impose sanctions." *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 502 (7th Cir. 2009) (quoting *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004)). "'Inherent power' describes the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 3 MOORE'S FEDERAL PRACTICE—Civil § 16.90. "A court, under its inherent powers, may sanction conduct that it finds to be an abuse of the judicial process." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 43–44 (1991)).

A court may impose sanctions pursuant to its inherent power "where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012) (collecting cases). A court must find by a preponderance of the evidence that "the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction." *Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 776, 778 (7th Cir. 2016). "Mere clumsy lawyering is not enough." *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018) (citing *Tucker*, 682 F.3d at 662). Dismissal as a sanction is a "powerful sanction" that court should issue only "after determining that there is 'a clear record of . . . contumacious conduct,' after considering 'the egregiousness of the conduct in question . . . ' and considering whether less drastic sanctions are

available." *Id.* (quoting *Barnhill v. United States*, 11 F.3d 1360, 1367–68 (7th Cir. 1993)).

### 4.2    Defendant's Allegations in Support of Sanctions

Defendant seeks sanctions against Plaintiff based on various instances of alleged misconduct by Plaintiff's counsel. ECF No. 81; *see generally* ECF No. 82. The Court enumerates them here before analyzing each.

First, Defendant alleges that Plaintiff's counsel committed fraud by submitting a "false warranty claim" in January 2024 to induce Defendant to ship "the bracket that is at the center of this case." *Id.* at 6–9. The "false warranty claim" represented that Plaintiff's counsel had purchased a product that was "missing one of the P-brackets for frameless cabinet installation," ECF No. 83-1 at 2, when it, in fact, was not. ECF No. 83 at 3; ECF No. 82 at 7–8. Based on that representation, Defendant's customer service shipped a replacement bracket to Plaintiff's counsel. ECF No. 83 at 2 (citing 83-1). Then, in March 2024, Plaintiff filed its First Amended Complaint, which specifically alleged as relevant to both personal jurisdiction and a claim of contributory infringement that Defendant "responded to . . . customer requests [in the United States] by, among other things, shipping or causing to be shipped into the United States" allegedly infringing replacement parts. ECF No. 37 at 6 ("For example, on or around February 12, 2024, [Defendant] shipped or caused to be shipped into the United States a replacement mounting bracket for an Accused Product . . . ."); *id.* at 13–14.

Defendant alleges that it demanded that Plaintiff's counsel remove reference to that shipment of the replacement bracket from Plaintiff's First Amended Complaint but that Plaintiff's counsel refused. ECF No. 82 at 11

(citing ECF No. 83 at 4–5). Plaintiff then successfully relied on Defendant's shipment of the replacement bracket to the United States in defending against Defendant's motion to dismiss. *Id.* at 10–11; *see* ECF No. 57 at 6–7 (citing ECF No. 37 at 6), 19–20 (citing ECF No. 37 at 6). Meanwhile, in Plaintiff's answer to Defendant's counterclaims, Plaintiff's counsel denied having ever made "a warranty claim for a . . . missing part" and admitted that the accused product purchased by Plaintiff's counsel in December 2023 had no broken or missing bracket. ECF No. 82 at 10 (citing ECF No. 63 at 10).

Defendant next contends that Plaintiff's counsel improperly interfered with Defendant's efforts to investigate the allegedly fraudulently obtained evidence. *Id.* at 11–12. Defendant alleges that Plaintiff's counsel compelled Defendant's counsel to travel to Plaintiff's counsel's office in Chicago to inspect the accused products, including the replacement bracket, which Defendant contends was "improper." *Id.* (citing ECF No. 83 at 5). Defendant's counsel ultimately agreed to travel to Plaintiff's counsel's office to "inspect[] . . . the accused products [that Plaintiff and Plaintiff's counsel] acquired and any replacement brackets or products that were shipped to" Plaintiff or Plaintiff's counsel as well as "all of the associated documents." ECF No 83-7 at 6. When Plaintiff's counsel arrived at the agreed upon time roughly a week later, however, "the original accused product and bracket that [Plaintiff] purchased . . . and the associated documents" were not there. *Id.* at 3. Defendant's counsel inquired by email why those items were not available for inspection, *id.*, and Plaintiff's counsel responded merely stating that the "associate [who arrived to inspect the items] asked [him] about it . . . and [Plaintiff's counsel] explained it to him," *id.* at 2. He did not, however, recount that explanation by email.

*See id.* (Defendant's counsel's response) ("I'm trying to create an accurate record of what transpired and you refuse to address my allegations.").

Defendant contends that the allegedly fraudulently obtained replacement bracket is merely one instance of misconduct by Plaintiff's counsel in this case. *See generally* ECF No. 82. Defendant alleges that Plaintiff's counsel also repeatedly "misrepresented the substance of meet and confers to the Court for strategic advantage," "filed a stipulation [to allow filing of a second amended complaint] to the Court as joint" when it was not, and "misrepresented U.S. law to foreign lawyers in order to force them to waive service." *Id.* at 13–18. Defendant also suggests, but does not argue outright, that the "catastrophic fire" that Plaintiff's counsel referenced in opposition to a motion to compel was fabricated. *Id.* at 14–15 (citing ECF No. 71 at 2 and ECF No. 83 at 9).

### 4.3 Analysis

Before delving into the specifics of Defendant's arguments, the Court will lay out the ethical standards by which it must evaluate counsel's conduct. "Lawyers representing clients in federal courts must follow federal rules[,] but most 'federal courts use the ethical rules of the states in which they sit.'" *Gnaciski v. United Health Care Ins. Co.*, 623 F. Supp. 3d 959, 965 (E.D. Wis. 2022) (quoting *Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1444 (E.D. Wis. 1993)). "Since the ethical codes adopted by both the Wisconsin Supreme Court and the Court of Appeals for the Seventh Circuit are based on the ABA Model Rules of Professional Conduct, the standards applicable to [ethical questions] in both forums are essentially identical." *Id.* (quoting *Callas v. Pappas*, 907 F. Supp. 1257, 1260 (E.D. Wis. 1995)).

The Court begins with Defendant's first contention regarding Plaintiff's counsel's allegedly fraudulent request for the replacement

bracket. In response to this allegation, Plaintiff notes that Defendant's "instructions direct end-users and customers to contact its agent for replacement parts" and that, pursuant to these instructions, Plaintiff's counsel requested a replacement bracket, which Plaintiff alleges infringes its patents. ECF No. 95 at 4 (citing ECF No. 69 at 6).[26] In other words, Plaintiff does not dispute that its counsel submitted the request at issue. Plaintiff also does not dispute that there was no missing bracket in the first place. *See generally* ECF No. 95; ECF No. 63 at 10. Instead, Plaintiff disputes that having sought the replacement under false pretenses constitutes an ethical violation. ECF No. 95 at 4–6. Plaintiff argues that the Wisconsin Rules of Conduct for Attorneys do not "prohibit an attorney from obtaining a replacement part, even if they misrepresent their purpose in doing so." *Id.* at 4 (citing *Impossible Foods Inc. v. Motif Foodworks, Inc.*, 675 F. Supp. 3d 448, 454 (D. Del. 2023)).

But *Impossible Foods* does not support Plaintiff's contention. In *Impossible Foods*, the plaintiff utilized private investigators to obtain samples of the defendant's allegedly infringing products at trade shows and through sales channels. 675 F. Supp. 3d at 450. The private investigators misrepresented their identities and purpose for obtaining the samples, *id.* at 450–52, but the defendant did not suggest that either personal jurisdiction or liability on the defendant's part was based specifically on the provision of the samples. Nor was the plaintiff's counsel directly involved in the alleged deception. Here, in contrast, Plaintiff's counsel himself requested the replacement bracket from Defendant and its claims processor by false

---

[26]Plaintiff implies that it did so because Defendant to date "ha[d] refused to produce a single physical specimen of its *own product*." ECF No. 95 at 4.

pretenses, expressly referenced the shipment of the replacement bracket to the United States in Plaintiff's amended complaint as a contributing basis for this Court to exercise personal jurisdiction over Defendant, ECF No. 37 at 6, and relied on the part's shipment in opposition to Defendant's motion to dismiss the contributory infringement claim against it, ECF No. 49 at 13; *see also* ECF No. 57 at 6–7, 19–20.

Rule 4.1(a)(1) of the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys provides that "[i]n the course of representing a client[,] a lawyer shall not knowingly . . . make a false statement of a material fact or law to a 3rd person." The rules exempt from this prohibition a lawyer's "advis[ing] or supervis[ing] others with respect to lawful investigative activities." WSCR 20:4.1(b). A lawyer may advise or supervise others "even in circumstances in which the conduct involves some form of deception." *Id.*, Wisconsin Committee Comment. The Wisconsin Committee Comment to the rule, however, clarifies that "[w]hen the lawyer personally participates in the deception, however, serious questions arise." *See also* 30 Moore's Federal Practice—Civil § 809.02[5][a] (noting that the practice of attorneys assisting with undercover investigations in civil cases "raises significant issues" and may implicate various ethical rules). Additionally, Rule 3.3(a)(1) of the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys provides that a lawyer shall not knowingly "make a false statement of fact . . . to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Lastly, Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Moreover, "litigants may not fraudulently create jurisdiction." *Conerly v. Flower*, 410 F.2d 941, 945 (8th Cir. 1969) (citations omitted). A defendant who has been lured into the court's jurisdiction by fraud may challenge the court's exercise of personal jurisdiction over him. 1 FEDERAL LITIGATION GUIDE § 1.62 (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 613 (1990); *Wyman v. Newhouse*, 93 F.2d 313, 315 (2d Cir. 1937), *cert. denied*, 303 U.S. 664 (1938); and *Chloe v. Queen Bee of Beverly Hills, LLC*, 630 F. Supp. 2d 350, 356 (S.D.N.Y. 2009), *vacated and remanded on other grounds*, 616 F.3d 158 (2d Cir. 2010)); *Chloe*, 630 F. Supp. 2d at 356 ("Courts will not exercise jurisdiction obtained by fraud." (citing Restatement (Second) of Conflict of Laws § 82 (1971) and *Burnham*, 495 U.S. at 613)).[27]

Upon consideration of these rules and authorities, the Court concludes that sanctions grounded in the Court's inherent authority are warranted here. "The prevailing understanding in the legal profession is that a . . . lawyer's use of an undercover investigator to detect ongoing violations of the law is not ethically proscribed . . . ." *Impossible Foods*, 675 F. Supp. 3d at 454 (quoting *Apple Corps Ltd. v. Int'l Collectors Soc'y*, 15 F. Supp. 2d 456, 475 (D.N.J. 1998)). In its opposition to the motion for sanctions, Plaintiff attempts to analogize its counsel with undercover investigators endeavoring to detect pre-existing anti-competitive activity or infringement that might "otherwise escape discovery of proof." ECF No. 95 at 5–6 (quoting *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 122–24 (S.D.N.Y. 1999) and collecting cases). But Plaintiff's counsel's conduct in making a claim for a replacement bracket did not merely serve to detect an

---

[27]The Court notes that Defendant, in any event, admits that for the purposes of this action it is subject to the personal jurisdiction of this Court. ECF No. 72 at 5–6.

ongoing violation of law, it also served to manufacture a basis for, or at least contributed to the Court's exercise of, personal jurisdiction over Defendant. Nor were these aims achieved indirectly through a third party—they were undertaken by Plaintiff's counsel himself, and Plaintiff cites to no authority involving such a circumstance. In fact, Wisconsin's Supreme Court Rules of Professional Conduct for Attorneys and caselaw suggest that an attorney personally serving this "investigator" role violates his ethical duties. *See Impossible Foods*, 675 F. Supp. 3d at 454 (suggesting that Rule 4.1 requires "a standard of candor and fairness that does not necessarily apply in the ordinary exchanges among persons who *do not* purport to own any professional credentials") (citation omitted) (emphasis added).

To impose a sanction pursuant to its inherent authority, the Court must conclude that the accused party "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker*, 682 F.3d at 661–62. "There is no single litmus test for determining what constitutes bad faith, though more than mere negligence is required." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (citing *Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003)). That standard is met here. Plaintiff's counsel does not dispute having filed the claim and does not dispute that there was never a missing bracket to begin with, making the claim false from its inception. That conduct was intentional and deceptive, and it was then exploited to influence these proceedings.

Plaintiff disputes the extent to which the shipment of the replacement bracket influenced the proceedings, arguing that the Court "did not rely upon [Plaintiff's] conduct in securing a replacement bracket in denying [Defendant's] motion [to dismiss]." ECF No. 95 at 8–9. It is true that serious sanctions such as those sought here—namely, dismissal—

generally "should not be invoked without first considering what effect—if any—the challenged conduct has had on the course of the litigation." *Barnhill*, 11 F.3d at 1368. There are, however, "situations in which . . . the district court[] [may] dismiss or enter judgment even in the absence of substantial adverse impact on the course of the proceedings"—for example, where "[m]isconduct . . . exhibit[s] such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Id.* (citing *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc*., 869 F.2d 1058, 1062 (7th Cir. 1989)) (footnote omitted). In other words, a showing of prejudice is not required if the misconduct is egregious enough, which is the case here.

In any event, to say that the Court did not rely upon the allegation regarding the shipment of the replacement bracket is false. The Court may not have relied upon it exclusively, but the Court explicitly considered it and relied upon it in reaching its conclusion. The Court noted in its order denying Defendant's motion to dismiss that the allegation of the February 2024 replacement bracket shipment was "merely one 'example' specifically pleaded." ECF No. 57 at 20. It was, in fact, the *only* specific example alleged. ECF No. 37 at 6. That specific allegation influenced the Court's analysis, even if it may not have been dispositive.

Plaintiff also argues that the Court was not, in disposing of Defendant's motion to dismiss, "misled" that the February 2024 replacement bracket was requested by Plaintiff's counsel himself, since the Court explicitly rejected Defendant's argument that that incident was "an artificial situation." ECF No. 95 at 9. The Court rejects this argument. In its

brief in support of its motion to dismiss, Defendant argued in part that the February 2024 shipping of the replacement bracket was "presumably" undertaken "at the direction of [Plaintiff] or its counsel" and was therefore "an artificial situation," given its suspicious timing. ECF No. 46 at 10. The Court rejected the argument on the basis that it was obligated to accept as true the well-pleaded allegations in the complaint. ECF No. 57 at 19 (citing *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)); *id.* at 17 ("[Defendant] cannot prevail on a motion to dismiss by contending that Plaintiff's well-pleaded allegations are factually false." (citing *Kubiak*, 810 F.3d at 480–81 and *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 900 (N.D. Ill. 2020))). But the Court's obligation at the motion to dismiss stage to take the well-pleaded allegations in the complaint as true does not give Plaintiff's counsel license to lie to Defendant's affiliates and manufacture jurisdiction. Moreover, at that time, the Court had no proof of Defendant's allegation that its shipment of the replacement bracket was an artificial situation created by Plaintiff's counsel. ECF No. 82 at 11 (noting that at that time, Defendant "did not have sufficient evidence [of the allegedly fraudulent replacement part claim] to make such a serious allegation" (citing ECF No. 83 at 4)). The Court has such proof now.

The Court next addresses Defendant's argument that Plaintiff's answer to Defendant's counterclaims—specifically, that Plaintiff's counsel did not submit a "warranty claim" for a replacement bracket—was false and lacked evidentiary support. ECF No. 82 at 10. Plaintiff opposes sanctions regarding its denial to Defendant's counterclaim on two bases: first, that Defendant failed to comply with Rule 11's procedural mandates, and second, that Plaintiff's denial was proper since the counterclaim referenced a "warranty claim" and Plaintiff "did not invoke the *warranty*

when it requested a replacement bracket." ECF No. 95 at 8 (emphasis added).

The Court begins with the former argument. As earlier noted, a Rule 11 motion must not be filed or presented to the court if "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Plaintiff argues that Defendant did not comply with this safe harbor provision. The Court will reject this argument. The Seventh Circuit's perspective, although criticized by other circuits, is that substantial, rather than technical, compliance with Rule 11's safe harbor provision is sufficient. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003); *N. Ill. Telecom, Inc.*, 850 F.3d at 887–88 (noting that "[n]o other circuit has adopted th[e] [substantial compliance] approach" but that nevertheless "*Nisenbaum* remains controlling circuit law on this point").

In May 2024, Defendant's counsel served a Rule 11 motion and supporting papers on Plaintiff by email. ECF No. 83-4 at 9. That motion did not include reference to the issue surrounding the replacement bracket, as Defendant's counsel was apparently not yet aware of it. *Id.* at 6 (noting that Defendant's counsel learned about the replacement bracket request "for the first time" in a call held after the filing of the Rule 11 motion). The following month, Defendant's counsel emailed Plaintiff's counsel regarding the alleged Rule 11 violations and asked Plaintiff to remove reference of the replacement bracket shipment from its pleadings because the bracket's procurement was an ethical violation. ECF No. 83-4 at 6–7. In response, Plaintiff noted that this issue was not reflected in the Rule 11 motion previously served upon it. *Id.* at 3. It does not appear that Defendant thereafter filed any amended or additional Rule 11 motion on Plaintiff. But

that does not appear to matter. Defendant substantially complied with Rule 11's safe harbor provision by notifying Plaintiff of the alleged ethical issue in writing, with reference to Rule 11, and demanding that Plaintiff correct it within 21 days. *Nisenbaum*, 333 F.3d at 808 ("[T]he defendants sent [the plaintiff's] lawyer a 'letter' or 'demand' rather than a 'motion.' Before turning to the court, defendants alerted [the plaintiff] to the problem and gave him more than 21 days to desist; he decided to press on. Defendants have complied substantially with Rule 11(c)(1)(A) and are entitled to a decision on the merits of their request for sanctions under Rule 11."); ECF No. 83-4 at 5–6 (Defendant's counsel asserting by email that Plaintiff "must . . . remove any reference to [Defendant] sending a replacement bracket into the United States from the Amended Complaint" because the procurement of the bracket "was an ethical violation" and a "violation of Rule 11").

The Court now turns to Plaintiff's latter argument—that Plaintiff's denial was appropriate because the counterclaim referenced a "warranty claim" and Plaintiff "did not invoke the warranty when it requested a replacement bracket." ECF No. 95 at 8. This argument splits hairs. Rule 11(b)(4) provides that "denials of factual contentions" must be "warranted on the evidence." Plaintiff's counsel may not have used the word "warranty" in his email request, but a reasonable reader of the counterclaim would know that its reference to the February 12, 2024 "warranty claim for a broken or missing part" referred to Plaintiff's counsel's request for a replacement bracket on that same date. Plaintiff's counsel's request was, in substance, a written warranty request—"an[] undertaking in writing in connection with the sale by a supplier of a consumer product to . . . repair, replace, or take other remedial action with respect to such product." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 729 (7th Cir. 2021) (quoting 15 U.S.C.

§ 2301(6)). To suggest otherwise denies common sense and indicates gamesmanship. *See CUNA Mut. Ins. Soc'y v. Off. & Pro. Empls. Int'l Union, Loc. 39,* 443 F.3d 556, 560 (7th Cir. 2006) ("The court must 'undertake an objective inquiry into whether . . . counsel should have known that his position [wa]s groundless.'" (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Loc. 731,* 990 F.2d 957, 963 (7th Cir. 1993))). The Court accordingly concludes that Plaintiff's denial of paragraph sixty of Defendant's counterclaims, ECF No. 63 at 10, was unwarranted based on the evidence and supports the imposition of sanctions in this case.

The Court next addresses Defendant's contention that Plaintiff's counsel improperly interfered with Defendant's efforts to investigate the allegedly infringing range hood and replacement bracket. ECF No. 82 at 11–12. According to Defendant, Plaintiff demanded that Defendant's counsel "travel to [Plaintiff's] counsel's office to review the purchased products and associated documents" and that "this was improper." *Id.* at 12. Then, upon arrival at Plaintiff's counsel's office, Defendant's counsel learned that the items could not be inspected because they were not in Plaintiff's counsel's possession. *Id.*

As a threshold matter, Defendant fails to cite to any authority in support of its assertion that it was improper for Plaintiff to demand that the allegedly infringing products be investigated at Plaintiff's counsel's office. This demand may have been improper, but Defendant does not explain why. Defendant has accordingly waived the point. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir. 1997) ("[T]he failure to cite authorities in support of a particular argument constitutes a waiver of the issue." (citing *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995); *Bratton v. Roadway*

*Package Sys., Inc.*, 77 F.3d 168, 173 n.1 (7th Cir. 1996); and *Salazar v. City of Chicago*, 940 F.2d 233, 242–43 (7th Cir. 1991))).

Plaintiff points out that Rule 11 is inapplicable to discovery-related disputes. ECF No. 95 at 9. Rule 11(d) explicitly notes that it "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." A request to inspect a tangible thing in the opposing party's possession, custody, or control falls under Rule 26(b). Fed. R. Civ. P. 34(a)(1)(B). Plaintiff is therefore correct that Rule 11 is inapplicable to this issue. However, sanctions could still hypothetically be imposed pursuant to the Court's inherent authority. *See Chambers,* 501 U.S. at 50–51.

As a factual matter, Plaintiff merely characterizes Defendant's accusation that it impeded the investigation of the allegedly infringing products as "false[]." ECF No. 95 at 9. This denial is unspecific and unsupported by affidavit or declaration. The lack of clarity surrounding Plaintiff's version of events is compounded by Plaintiff's counsel's prior refusal to describe its version of events by email. *See* ECF No. 83-7 at 2 (asserting merely that counsel "explained it to" Defendant's counsel's associate). Meanwhile, Defendant's counsel's detailed allegations are made under penalty of perjury. ECF No. 83 at 6–7, 12. The Court will accordingly credit Defendant's counsel's specific, sworn version of events in favor of Plaintiff's bald, generalized denial.

The Court concludes that it was improper for Plaintiff's counsel to fail to have the products available for inspection at the agreed upon time, particularly since the inspection was set to occur in their own office. Defendant's counsel incurred "not insignificant" expense in having an associate travel to Chicago for the inspection, just to be told that the products were not available for inspection. ECF No. 83 at 5–6. At no point

in the parties' correspondence, after making the plan for Defendant's counsel to come inspect the relevant items, did Plaintiff's counsel indicate that the relevant items were not in its possession or, alternatively, would not be in its possession by the time of the inspection. *See generally* ECF No. 83-7. Indeed, by accepting the inspection request, Plaintiff's counsel was conceding that it had the relevant items "in [its] possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Plaintiff offers no explanation whatsoever for the unavailability of the products for inspection. If it were a matter of an administrative mix-up, for example, presumably Plaintiff would state as much. The lack of explanation by Plaintiff leaves the Court to assume that its motivation for the unavailability of the items was unreasonable, grounded in bad faith, or otherwise improper.

The Court next turns to Defendant's contentions regarding other misrepresentations that Plaintiff's counsel allegedly made to the Court. Defendant argues that to avoid an unfavorable ruling on its motion to compel, ECF No. 70, Plaintiff's counsel misrepresented to the Court the substance of the parties' November 14, 2024 meet and confer call about the anticipated motion. ECF No. 82 at 14; *see* ECF No. 70-1 at 3. In its brief in opposition to the motion, Plaintiff's counsel averred that, in their call, Defendant's "counsel merely inquired as to the timing of [Plaintiff's] document production, to which [Plaintiff's counsel] advised that [he] could not provide the anticipated date without further input from the client." ECF No. 71-1 at 2. Plaintiff's counsel also represented that its production efforts had been "impeded by a catastrophic fire at one of [Plaintiff's] facilities." *Id.* at 1. "Had [Defendant] properly conferred with [Plaintiff]" regarding the motion to compel, Plaintiff's counsel wrote, "these details"—including the fact of the catastrophic fire—"could have been brought to [Defendant's]

attention." ECF No. 71 at 2. Defendant implies that the "catastrophic fire" was a fabricated excuse since Plaintiff's counsel "never mentioned th[e] fire" to Defendant's counsel in their multiple communications on the topic. ECF No. 82 at 14; ECF No. 83 at 9 ("In all our correspondence and discussions, [Plaintiff's] counsel never mentioned the 'catastrophic fire' that it represented to the Court prevented [its] collection and production of documents.").

In its order on the motion to compel, the Court noted that Plaintiff "fail[ed] to mention" "the specific timing" of the alleged catastrophic fire, but it nevertheless denied the motion to compel without prejudice based on Plaintiff's counsel's representations. ECF No. 73 at 2. Now, in opposition to the motion for sanctions, Plaintiff maintains that the parties' November 14, 2024 "meet and confer" did not even concern Plaintiff's production, but Plaintiff does not address Defendant's suspicion about the fire. ECF No. 95 at 10.

The Court is unable to determine on the record now before it whether this alleged misconduct supports the imposition of sanctions. Defendant's counsel swears that the parties met and conferred on the production issue on November 14, 2024 and that in all their discovery-related communications around that time, there was never any mention of a "catastrophic fire." ECF No. 83 at 7–9. Meanwhile, Plaintiff's counsel avers that the parties never met and conferred with respect to the production issue. ECF No. 71-1 at 2. Someone is lying; both versions of events cannot simultaneously be true. The Court could ultimately choose to credit Defendant's version of events, both because—as thoroughly discussed above—Plaintiff's counsel has committed multiple sanctionable violations in this case and because Defendant swore under penalty of perjury to his

version of events, while Plaintiff's counsel conveniently did not. *Compare* ECF No. 83 at 12 *with* ECF No. 71-1 at 2. But these sorts of petty he said/she said disputes are beneath the Court, and unfortunately this case has been rife with such disputes. Because there is well-established sanctionable conduct outside of this contention, the Court will not ultimately make a finding as to which version of events it credits.

Defendant next contends that Plaintiff's counsel misled the Court regarding "the parties' December 23, 2024 meet and confer" on Defendant's motion to extend the dispositive motion deadline. ECF No. 82 at 15. Following that meet and confer, Plaintiff's counsel represented in its brief opposing Defendant's motion that Defendant "was unprepared to outline the issues and grounds upon which it intended to seek summary judgment." *Id.* (quoting ECF No. 78 at 2). According to Defendant's counsel, that representation was false, and it was, in fact, Plaintiff's counsel that "refused to discuss summary judgment." *Id.*; *see* ECF No. 79-2 at 2–3 (Defendant's counsel's affidavit swearing that during this meet and confer, he stated several times that he was willing and prepared to confer regarding summary judgment); ECF No. 79-3 at 2 (Defendant's local counsel swearing that Defendant was prepared during the December 23, 2024 call to conduct the summary judgment meet and confer).

On the one hand, it appears that Plaintiff's representation that Defendant was "unprepared to outline the issues and grounds upon which it intended to seek summary judgment" was inaccurate. ECF No. 78 at 3. The issue was not that Defendant was unprepared to discuss the matter; the issue was that, as Plaintiff's counsel noted in its brief opposing Defendant's motion to extend the dispositive motion deadline, Defendant had sought to meet and confer regarding summary judgment too late, in violation of the

Court's protocols. *Id.* ("Defendant only first sought the required meet and confer more than a week after th[e] [C]ourt[-]ordered deadline [for such a meeting] had passed."). Plaintiff's counsel was, therefore, within his right to refuse to meet and confer regarding summary judgment, but he nevertheless should have honestly represented his refusal and underlying reasoning in his opposition rather than falsely representing that Defendant's counsel was unprepared to do so on December 23, 2024.

Defendant next alleges that Plaintiff's counsel misrepresented to the Court that Defendant had consented to the filing of Plaintiff's second amended complaint. ECF No. 82 at 16. On November 13, 2024, Plaintiff filed a stipulation to allow its filing of a second amended complaint, representing that Defendant "provided written consent to the filing of the Second Amended Complaint on November 8, 2024." ECF No. 68 at 1 & n.1. The Court adopted the stipulation in light of the parties' agreement. Nov. 14, 2024 text order. Defendant argues, however, that its consent to Plaintiff filing its second amended complaint was expressly conditioned on Plaintiff "not seeking discovery on the newly added patent," a condition that Plaintiff subsequently ignored. ECF No. 82 at 17 (quoting 83 at 9).

Defendant's perspective is accurate. On November 8, 2024, Plaintiff's counsel emailed Defendant's counsel regarding whether Defendant "intend[ed] to oppose or consent" to Plaintiff filing a second amended complaint. ECF No. 83-8 at 10. Defendant's counsel promptly responded: "[W]e consent to adding the patent. As we agreed, [Plaintiff] will not seek additional discovery based upon the addition of this patent." *Id.* at 9. The following week, at 1:26 P.M. on November 13, 2024, Plaintiff filed the stipulation representing Defendant's consent, without condition or limitation, to the filing of the second amended complaint. ECF No. 68.

Within minutes, Defendant's counsel emailed: "[M]y consent was conditioned on you not seeking discovery on the newly added patent. I made that clear on my call and [i]n my email consenting to the stipulation. You did not have my consent to file without that agreed upon stipulation." ECF No. 83-8 at 8–9. Plaintiff's counsel responded: "We discussed that the addition of this patent is unlikely to require distinct discovery from that related to the other two patents. However, I just wanted to clarify that [Plaintiff] did not agree to somehow forego or waive its ability to serve additional discovery requests . . . ." ECF No. 83-8 at 9.[28] Later that evening, Plaintiff emailed again: "Per our discussion [Plaintiff] does not presently anticipate that there will be discovery requests unique to this newly added patent . . . . Please let us know whether [Defendant] consents to the stipulation to amend the complaint (attached for reference)." *Id.* at 8. Defendant's counsel responded: "[T]his stipulation does not have any restrictions on [Plaintiff's] further discovery, which was what my consent was conditioned upon. Please resend with those additions." *Id.* at 7. Plaintiff's counsel failed to respond for the next month, despite follow-up by Defendant's counsel. *Id.* at 6–7. When Plaintiff's counsel finally did respond, it was another partner rather than the one who had been corresponding with Defendant's counsel about the issue, and he feigned

---

[28]It is not entirely clear which of these two emails came first; Defendant's counsel's affidavit represents that Plaintiff's counsel emailed that it "did not agree to somehow forego or waive its ability to serve additional discovery requests," and then filed the stipulation to file the second amended complaint just minutes later. ECF No. 83 at 10. And while the order of the emails appears to support this, *see* ECF No. 83-8 at 8–10, the time stamps from the emails suggest that Plaintiff's counsel did not send that email until after it filed the stipulation, as set forth above. This could be an issue of differing time zones, but the Court does not have sufficient information at this time to determine the real order of events.

confusion. *Id.* at 6 ("Could you advise what your disagreement, if any is . . . ?").

Plaintiff's counsel filing the stipulation to file a second amended complaint and the representations therein, in light of their communications with Defendant's counsel on that topic, was improper and represents a continuation of bad faith litigation practice on their part. Defendant's counsel was clear from the outset that his consent to the filing of the second amended complaint was conditioned upon something that Plaintiff ultimately would not agree to. *Id.* at 8–10. If Plaintiff's counsel had any objection to that condition or characterization, he could have promptly followed up by email to clarify. Instead, he filed the stipulation to file the second amended complaint and proceeded to act as if Defendant's consent were not in question. When Defendant's counsel then repeated that which he had already clearly stated from the beginning, Plaintiff's counsel simply ignored him. After all, Plaintiff had already gotten what it wanted—the stipulation had been filed, and the Court had adopted it. According to Defendant's counsel, Plaintiff only later reneged on the agreement that it would not seek additional discovery. ECF No. 83 at 10; *see also supra* note 28. This misconduct also supports the imposition of sanctions pursuant to the Court's inherent authority.

Defendant's last allegation of misconduct relates to Plaintiff's prior counsel's communications with Defendant's foreign counsel about waiver of service. ECF No. 82 at 17. Because this issue concerns different counsel than all Defendant's other allegation and it therefore has no bearing on the Court's summary judgment analysis, *see supra* Section 3, and because the Court has already found multiple independent bases that support the

sanction of dismissal with prejudice, the Court will not analyze this additional allegation.

Having concluded that sanctions are warranted based on various instances of misconduct and bad faith litigation practice on the part of Plaintiff's counsel, the Court must next determine the appropriate sanction to impose. As earlier noted, Defendant seeks outright dismissal, an order prohibiting Plaintiff from "offer[ing] any evidence that [Defendant] sells or offers to sell the Accused Product in the United States," "or any other relief the Court deems appropriate." ECF No. 81 at 1.

Any sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). It "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* The Court may impose such a sanction "on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* at (c)(1).

Meanwhile, under its inherent authority, the Court has discretion "to fashion an appropriate sanction." *Chambers,* 501 U.S. at 44; *Grochocinski,* 719 F.3d at 799 ("The federal courts have the inherent power to impose a wide range of sanctions upon parties for abusive litigation."). That includes "outright dismissal of a lawsuit." *Chambers,* 501 U.S. at 45 (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765 (1980)). Dismissal "is a particularly severe sanction, yet [it] is within the court's discretion." *Id.* There is, moreover, no "requirement that a district court impose graduated sanctions." *Fuery,* 900 F.3d at 464. "[T]he appropriateness of lesser sanctions

need not be explored if the circumstances justify imposition of the ultimate penalty—dismissal with prejudice." *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) (citing *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 165 (7th Cir. 1994)).

The Court concludes here that Plaintiff's counsel's misconduct as analyzed above warrants the dismissal of this action with prejudice. This case does not involve just one or two isolated instances of misconduct. It presents several such instances, some of which by themselves present serious ethical concerns that warrant dismissal. Plaintiff's counsel has made misrepresentations of law and fact to third parties to further Plaintiff's position in this case and has misrepresented facts to the Court for strategic advantage. "[C]ivil litigation 'is not supposed to be merely a game, a joust, a contest.'" *John v. Hix Wrecker Serv., Inc.*, 528 F. App'x 636, 639 (7th Cir. 2013) (quoting *Ash v. Wallenmeyer*, 879 F.2d 272, 275 (7th Cir. 1989) (internal brackets omitted)). District courts preside over cases "with an eye toward discovering the truth." *Id.* Plaintiff's counsel's misconduct in this case materially interfered with that end.

5.      **MOTION TO RESTRICT**

On March 12, 2025, Plaintiff brought a motion to restrict certain documents it filed in connection with its opposition to the motions for summary judgment and sanctions. ECF No. 93. The basis for the motion to restrict is that these documents "contain . . . sensitive business information" that may pose "serious competitive harm" to Defendant and that Defendant has already designated these documents as confidential under the terms of the protective order in effect in this case. ECF No. 94 at 1–2. To date, Defendant did not file any opposition to the motion to restrict. Given that the exhibits may pose potential serious commercial injury to Defendant if

disclosed, the Court finds good cause to restrict the documents that are the subject of Plaintiff's motion. *See* Gen. L.R. 79(d)(3). As such, the Court will grant the motion to restrict and direct that the documents subject to the motion—ECF Nos. 96-1, 99-2, 99-3, 99-4, 99-8, 99-9, 99-10, and 99-11—remain under case participant-only restriction until further order of the Court.

6.    **CONCLUSION**

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment as to Count One (patent '329) on the grounds that patent '329 is invalid as indefinite and will grant Defendant's motion for summary judgment as to Counts Two (concerning patent '611) and Three (concerning patent '316) because Plaintiff has failed to provide any admissible evidence of the Accused Products from which a reasonable jury could find in its favor. It will dismiss without prejudice Defendant's counterclaims. Lastly, the Court will deny as moot Defendant's motion for sanctions.

Accordingly,

**IT IS ORDERED** that Defendant Conglom Hong Kong Limited's motion for summary judgment, ECF No. 84, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Plaintiff Broan NuTone's motion to restrict, ECF No. 93, be and the same is hereby **GRANTED**; ECF Nos. 96-1, 99-2, 99-3, 99-4, 99-8, 99-9, 99-10, and 99-11 shall remain under case participant-only restriction until further order of the Court;

**IT IS FURTHER ORDERED** that Defendant Conglom Hong Kong Limited's motion for sanctions, ECF No. 81, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff Broan NuTone, LLC's claims be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendant Conglom Hong Kong Limited's counterclaims be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 2nd day of October, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge